[No. 1387.   Decided December 26, 1894.]

FREDERICK W. WARD, *Respondent, v.* NATIONAL FIRE
INSURANCE COMPANY, *Appellant.*

INSURANCE—CONDITIONS OF POLICY—COPIES OF INVOICES AND
ACCOUNTS.

Where one of the conditions of a policy of fire insurance is that
the assured "shall produce all books of account, bills, invoices and
other vouchers, or certified copies thereof if the originals be lost,"
for the examination of the insurer, the assured cannot recover on the
policy unless he complies substantially with such condition, and the
fact that it may not be in his power to produce all the lost originals,
will not excuse his failure to produce such as may be obtainable.

*Appeal from Superior Court, King County.*

*Scott, Corson & Winstock,* for appellant.

A full compliance with the condition requiring the assured to pro-
duce books of account, invoices, etc., was indispensable to a right of
action upon the policy, unless a compliance was impossible or was
waived by the insurer.   *O'Brien v. Commercial Fire Ins. Co.*, 63 N.

Y. 108; Barbour, Ins., § 83 *et seq.*; *Johnson v. Phœnix Ins. Co.*, 112 Mass. 49.

*Pratt & White*, for respondent.

All that can be required of the insured is to render as full and particular account of his loss as the nature of the case will admit, and if all his books and papers are destroyed so that he cannot itemize it, a general statement of the gross amount of his loss, and the nature, character and value of the property destroyed, is a compliance with the terms of the policy. The condition of a policy requiring the insured to produce his books, should not be so construed as to require a party to produce books which he had not, and which without fault on his part he could not produce. *Bumstead v. Dividend Mutual Ins. Co.*, 12 N. Y. 92 ; 2 Wood, Ins., p. 956 ; *Norton v. Rensselaer Ins. Co.*, 7 Cow. 645 ; *Peoples' Fire Ins. Co. v. Pulver*, 127 Ill. 246 ; *Home Ins. Co. v. Cohen*, 20 Grat. 312 ; *Aurora Fire Ins. Co. v. Johnson*, 46 Ind. 315 ; *McLaughlin v. Washington Co. Fire Ins. Co.*, 23 Wend. 525 ; *Mechanics' Fire Ins. Co. v. Nichols*, 16 N. J. Law, 410 ; *Harkins v. Quincy Mutual Fire Ins. Co.*, 16 Gray, 591. If goods are paid for in cash without taking vouchers, he is not bound, at the demand of the insurer, to procure from the person furnishing them certified statements of their account. *Goldsmith v. Gore Dist. Ins. Co.*, 27 U. C. (C. P.) 435.

The opinion of the court was delivered by

DUNBAR, C. J.—The respondent was the proprietor of a grocery store in the city of Seattle, and had a policy of insurance in the appellant company on his stock of goods. One of the conditions of the policy was as follows :

"As often as required the assured shall exhibit to any person designated by this company all that remains of any property herein described, submit to examinations under oath by any person named by this company; and subscribe to the same ; and shall produce all books of account, bills, invoices and other vouchers, or certified copies thereof if the originals be lost, and permit extracts and copies thereof to be made, at such reasonable times and places as may be designated by this company or its representatives."

The respondent made proofs of loss and forwarded them to the general agent of the company at San Francisco, and upon receipt of these proofs the manager of the appellant wrote the respondent the following letter :

"SAN FRANCISCO, March 1, 1893.
"*Frederick W. Ward, Esq.,*
          "*Seattle, Wash.:*

"DEAR SIR:—We are in receipt of what purports to be notice of fire and proof of loss, with notary's certificate under Policy No. 51,594, issued to you by the National Fire Insurance Company. As we understand from your preliminary statement that the books of account, bills, receipts and vouchers were burned in said fire, we are compelled to ask you, under the conditions of the policy, to produce certified copies of bills, invoices and other vouchers in support of the claim, and permit extracts and copies thereof to be made at this company's office in Seattle at such time as may hereafter be designated after being advised by you of your readiness to produce such documents.

"Yours very truly, (Signed) GEO. D. DORNIN, Mgr."

To this letter the respondent replied as follows :

"SEATTLE, WASH., March 9, 1893.
"*Geo. D. Dornin, Esq.,*
          "*San Francisco, Cal.:*

"DEAR SIR:—Yours of the 1st inst. to hand. In reply would say that since commencing business over three years ago I have had business with about fifteen different wholesale grocery men both here and in other places outside, besides buying considerable goods at bankrupt sales and job lots around the city. Besides the credit purchase I have bought for cash a great deal of merchandise, where it would be impossible to furnish invoice. Now the proposition of furnishing to you invoices of all goods bought while in business I would be pleased to do providing it was in my power to do so. The circumstances that attend a business running so long are such that it renders it practically impossible to comply with your request, and I cannot see what would be gained providing it was possible. I furnished what I supposed would be conclusive evidence that at the time of the fire I had more goods than the insurance called for, and I would like to have at your earliest convenience a decisive answer in regards to proof of loss furnished you as to whether you intend to accept it and settle or ignore it and refuse settlement. My store was what might be termed a general store, consisting of groceries principally.

"Yours,     (Signed)     F. W. WARD."

To this the appellant replied as follows :

"SAN FRANCISCO, March 24, 1893.

"*F. W. Ward, Esq.,*

 "*Care Ellsworth & McGrew, Seattle, Wash.:*

 "DEAR SIR:—I am in receipt of your favor of March 9, and in reply beg to refer you to the conditions of the policy of insurance, Section 10, Lines 1 to 10 inclusive ; Section 13, Lines 1 and 2, and Section 14.

 "Yours very truly, (Signed) GEO. D. DORNIN, Mgr."

The Section 13 referred to provides that "the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by the company "; and Section 14 above referred to provides that "there can be no waiver of any condition of this policy unless such waiver is clearly expressed in this policy in writing."

There was no further correspondence, and the respondent sued for the collection of the claim and obtained judgment as prayed for. So that it will be seen that there is but one question before this court, and that is whether respondent's failure to furnish his original books of account, or certified copies thereof, and duplicate vouchers of goods purchased by him, was a defense to the action. Authorities are cited by both appellant and respondent, but it seems to us that this is more a question of fact than of law. It was decided in *O'Brien v. Commercial Fire Ins. Co.*, 63 N. Y. 108, that—

 "Where a policy of fire insurance upon a stock of goods contains a clause providing that the assured will, if required, produce as part of his proofs of loss certified copies of all bills and invoices, the originals of which have been lost, a failure to comply with the condition will defeat a recovery upon the policy in the absence of proof of waiver or of inability, without fault of the insured, fully to perform."

And we think this is the uniform law on the question. In fact, we have been unable to find any authority opposed to this proposition. The cases cited by respondent in no way militate against the law thus announced. They simply go to the extent that all that can be required of the insured is to render as full and particular an account of his loss as the nature of the case will admit. This duty, we understand, is

imposed upon the insured under such provisions of the policy as the one at bar by all the courts, while some courts have gone to the extreme, on the other hand, of holding that it was the absolute duty of the insured to comply with the provisions of the policy, and that a failure under any circumstances would be a defense to the action.

We think this is carrying the rule too far, but it certainly must be conceded that the provision set forth in the policy in this case is a reasonable one, and the insured should be required to comply with it, if possible. This is a provision for the benefit of the insurer, to prevent it from being imposed upon by scheming and dishonest men ; a provision which they have a right to incorporate in their policy and a very necessary one for their protection. And it seems to us, after an examination of the testimony in this case, that there was no attempt whatever on the part of the insured to comply with this provision. It is true that, according to his testimony, he would not have been able to have obtained invoices of the goods that he purchased for cash, but it appears that there was absolutely nothing to prevent him from obtaining the invoices and bills of goods that he had purchased on credit ; and it can reasonably be understood that a copy of those bills would have been of incalculable benefit to the assurer in determining whether or not the claim was a just one.

And it is not for the assured in the face of such an agreement, to determine that because he cannot furnish all the proof that is required, he will refuse to furnish any, or refuse to aid the insurers in any way in determining questions that are of vital importance to them in the case. In fact, the insured seems from the start to have cavalierly settled this question, both for himself and the other party to the agreement. He stated in his correspondence that he could not see what would be gained in furnishing these data, if it were possible; then announces that he furnished what he supposed would be conclusive evidence that at the time of the fire he had more goods than the insurance called for, evidently resting upon the proof that he had furnished outside of this require-

ment. It might have been conclusive evidence, but, inasmuch as he and the appellant had stipulated what kind of evidence should be required, it was his duty to furnish that evidence if possible, and as far as possible. That he made no effort in this direction is plainly manifest from his own testimony. On page 10 of the record the following testimony appears:

"Q Did you ever make any inquiry of either one of the houses to furnish you with a bill of the goods you had purchased?

A. For all I got from them?

Q. Did you or did you not?

A. No.

Q. Now, when you bought goods from Roy & Co. for cash, after this fire, did you ever inquire of them if they had any record of sales made to you or cash paid by you for goods?

A. It was not necessary.

Q. Did you ever make any inquiry of them?

A. No, sir."

Again on page 11, in response to the question:

" You never went there to inquire, then, whether they kept any record of it. Now this company requested you to do that very thing, did it not?

A. They requested me to get all the duplicate bills of the business done.

Q. And you never got any of them or tried to get any of them?

A. I never got any; no, sir.

Q. Did you try?

A. I did in that way.

Q. In what way?

A. Well, I knew I could get a few of the invoices of the goods.

Q. But you did not get them, did you?

A. I did not think it was necessary.

 \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Q. You could have found out by inquiring, could you not?

A. If I had gone around, I suppose, and asked them to figure up everything for three years time I could have found out who I bought most of.

Q. Was not that what was requested of you?

A.   I was requested to get duplicate bills of all the business I done, not one or two.

Q.   And because you could not get everything you did not get anything?

A.   Because I could not get all."

And much more testimony was given by the respondent to the same effect.   All through his testimony he seems to place great stress on the fact that he was commanded to produce all the vouchers for the last three years.   In answer to the following question by his attorney:   "Mr. Ward, I wish you would state to the jury how long this demand was made on you; how long they asked for invoices of these goods," he said:   "They asked for the full time I was in business, three years and a month."

Q.   Two years before they had a policy on the goods?
A.   About, yes.

Now this was not true according to the letter which he introduced in evidence himself.   There was no time mentioned.   The language was:   "We are compelled to ask you, under the conditions of the policy, to produce certified copies of bills, invoices and other vouchers in support of the claim and permit extracts and copies thereof to be made," etc.   So that the harsh construction which the witness was placing upon this letter, to the jury, is not borne out by the letter itself; and the testimony of this witness throughout is not characterized by that frankness by which it ought to be, as the following excerpt shows:

"Q.   How much were your sales per month?
A.   They differed in different months.
Q.   Of course, but I want the average.
A.   I never averaged them up.
Q.   Cannot you give this jury any idea of the average sales per month?
A.   If I knew exactly how much I sold—
Q.   I do not want to know exactly.   I want you to at least try to approximate.
A.   I could not form a correct idea of the average per month.   I might say a thing and it might be wrong.
Q.   Then how do you know what the value of these goods were?

368 SPEARS v. LAWRENCE

A. How do I know that?
Q. Yes, sir.
A. From the facts."

It will be seen that the witness has just refused to state any facts, and, if he knew as little about his business as his testimony would indicate, it would become very important to the insurer to have some data outside of his own testimony to satisfy it of the amount of the loss or of the goods that were actually in the house at the time of the fire.

The testimony offered by the plaintiff, without considering the testimony offered by the defense, convinces us that there was no attempt on the part of the insured to substantially comply, or to comply at all, with the provisions of the agreement in the contract, with reference to furnishing invoices and bills of goods, and that the non-suit asked by the appellant should have been granted.

The judgment will, therefore, be reversed and the cause remanded with instructions to grant the non-suit asked.

SCOTT, HOYT and STILES, JJ., concur.