[No. 9308.    Department Two.    July 13, 1911.]

SEATTLE MERCHANTS ASSOCIATION, *Appellant*, v. GERMANIA
FIRE INSURANCE COMPANY OF NEW YORK, *Respondent*.[1]

APPEAL—REVIEW—FINDINGS. Findings upon conflicting and ir-
reconcilable evidence will not be disturbed on appeal.

INSURANCE — FIRE INSURANCE — INVENTORY. A refusal, after re-
peated demands, to furnish an inventory of goods, damaged but not
destroyed, as required by a fire insurance policy, where it might
have been done, defeats any action on the policy, although an in-
ventory was furnished later after it was too late to be of any use.

SAME—PROOF OF LOSS. Failure to furnish proofs of loss within
the sixty days required by a fire policy, without any excuse for the
delay, forfeits all rights under the policy; and it is not a sufficient
excuse that the company had been demanding an inventory, re-
quired by the policy to be given forthwith, without making specific
mention of the proofs of loss.

Appeal from a judgment of the superior court for King
county, Gay, J., entered May 19, 1910, upon findings in favor
of the garnishee defendant, after a trial on the merits before
the court without a jury, in a garnishment proceeding.
Affirmed.

*Ira Bronson*, for appellant.
*Granger & Clarke*, for respondent.

ELLIS, J.—Appellant sought to garnish a debt which it
alleged to be due from respondent to the defendant H. S.
Davidson, arising from a loss sustained by him under a
policy of insurance which it is conceded was issued to him by
respondent on June 26, 1908, insuring him in the sum of
$2,000 against loss by fire to certain store furniture and fix-
tures, and a general stock of merchandise such as is usually
kept for sale in a retail grocery store. It is also conceded
that a loss by fire to the property covered by the policy was
suffered on March 15, 1909. Respondent denied liability on

[1]Reported in 116 Pac. 585.

the grounds, that the assured failed to furnish a certain inventory as required by the policy; that the assured failed to make proofs of loss within sixty days as required by the policy; that there was not a total loss, and in so stating in the proofs finally made, the assured forfeited the policy for fraud. A jury being waived, the cause was tried to the court. Findings of fact and conclusions of law were made and judgment rendered discharging the garnishment. Thereupon this appeal was taken.

The policy of insurance contained the following provision:

"If fire occur the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon; and within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire, the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon; all encumbrances thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all the descriptions and schedules in all policies; any change in the title, use, occupation, location, possession, or exposures of said property since the issuing of this policy; by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of the fire; and shall furnish, if required, verified plans and specifications of any building, fixtures, or machinery destroyed or damaged; and shall also, if required, furnish a certificate of the magistrate or notary public (not interested in the claim as a creditor or otherwise, nor related to the insured) living nearest the place of fire, stating that he has honestly examined the circumstances and believes the insured has honestly sustained loss to the amount that such magistrate or notary public shall certify."

The court found, among other things, that the insured property was not wholly destroyed by the fire; that valuable

salvage remained; that the stock was left in such condition that a complete inventory and check could have been made; that the insurance company, through its agents, repeatedly demanded that assured furnish an inventory of the stock so that representatives of the company could check over the remains and determine the amount of stock in the premises at the time of the fire; that assured repeatedly refused to furnish the inventory as demanded, until May 7, 1909, when an inventory, though not such as required by the policy, was furnished; that immediately on receiving the inventory the adjusters of the insurance company went to the place of the fire and found all of said property gone and the ground absolutely bare; that the company at no time has had an opportunity under the terms of the policy to determine the amount of loss sustained by reason of the fire. The court further found that the assured refused to furnish proofs of loss as demanded until more than sixty days after the fire, and that the insurance company and its adjusters acted openly and fairly and in no way sought to evade any honest obligation arising under the policy by reason of the admitted fire.

The evidence is so conflicting as to the extent of the loss as to be hopelessly irreconcilable. The court found that the loss was not total but that valuable salvage remained. No useful purpose would be served by reviewing the evidence on this point in detail. We have examined the record with great care, and we are satisfied that this finding is supported by a clear preponderance of the evidence. This court has frequently held that findings of the trial court will not be disturbed where the evidence is conflicting and irreconcilable. *Palmer v. Washington Securities Inv. Co.*, 43 Wash. 451, 86 Pac. 640; *Helphrey v. Strobach*, 13 Wash. 128, 42 Pac. 537; *Skeel v. Christenson*, 17 Wash. 649, 50 Pac. 466.

The principal controversy seems to have arisen concerning the furnishing of the inventory required by the insurance company. The appellant complains that the agents and adjusters of the company demanded an itemized inventory of

the whole stock, while the policy only required that the damaged goods be separated from the undamaged goods and an inventory be made of the same.   If, as a matter of fact, the whole stock was left in such condition after the fire as to make it possible, the terms of the policy would require a complete inventory of the whole stock.   The language used in the policy is, "separate the damaged from the undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon . . ."   The court found that the stock was left in such condition that a complete inventory and check could have been made.   On this point the evidence is very conflicting.   The adjuster, Penfield, and the agent of the company, Weeks, both testified that they visited the scene of the fire two or three days after it occurred, and that it was in such condition at that time that one familiar with the stock could have made a complete inventory.   The adjuster, Keller, who visited the scene a week or ten days afterwards, testified that, at that time, it was still in such condition as to permit a complete inventory.   On the other hand, the assured and his wife both testified that such a thing would have been impossible.   Mr. Davidson, however, was so badly burned that he did not visit the scene until over two weeks after the fire, and his wife says that she saw the place the night of the fire but made no examination until the health officers ordered that the premises be cleaned up.   One J. C. Dare testified that he saw the premises next day and he considered it a total loss, but his testimony shows that he made no very careful examination.   We believe the evidence as a whole was sufficient to warrant the court's finding that a complete inventory and check could have been made.

Two or three days after the fire, the special agent and adjuster, Penfield, went to the home of the assured with the local agent of the insurance company.   He testified that he explained that an inventory was necessary to an adjustment,

using, he says, the following language: "Well, now we will
have to have an inventory. We have to separate the dam-
aged from the undamaged goods, and that is the way to pro-
ceed." The assured also testified that "something of that
kind was said." The assured was then not able to attend to
the matter personally, but his wife, who was thoroughly fa-
miliar with the stock and had aided him daily in the store and
in making a prior inventory, said she thought she could do it.
Penfield offered to assist her in making a complete inventory
of the stock but the assured would not permit it, saying that
the matter was in the hands of Mr. Baxter, his attorney. On
the same day Penfield and Weeks saw Baxter and demanded
an inventory of the property with the cost price and amount
of damage. Penfield testified as to this conversation as fol-
lows:

"He said he didn't have to do anything of the kind; they
had a total loss out there and he would not do anything." . .
"I said 'that may be very well, but we have got to have that
to proceed; there is no use of having any trouble here; that is
what we require; if you cannot do that, why, just read over
the conditions of the policy and see what it says and follow
that—be governed by that.' "

The record is replete with evidence of demands for an in-
ventory, which were met with refusal, both by the assured and
his attorney, but never, so far as we are able to discover, on
the ground that the inventory demanded was not such as was
called for by the policy. Finally, some fifty-two days after
the fire, an inventory purporting to be a partial inventory of
the entire stock and fixtures was furnished. It was then too
late to be of use. Two adjusters for the company went to
the scene of the fire and found the ground bare. The policy
contained a further provision for arbitration in the event of
disagreement as to the amount of the loss, and that the com-
pany may at its option take all or any of the articles at the
ascertained or appraised value. The obvious purpose of the
provision for an inventory is to aid in determining the value

of the stock and the amount of the loss, to make the basis for an adjustment, and in the event of disagreement, to lay the foundation for arbitration and appraisement.   While provisions of this character will be strictly construed as against the insurer, they cannot be wholly ignored.   We cannot agree with those courts which hold such provisions merely directory. The assured seems to have assumed that he alone had the right to determine that the loss was total, and refused in any way to aid the insurer to ascertain the actual value of the stock or the value of the salvage.   His attitude is fairly expressed by this court in *Ward v. National Fire Ins. Co.,* 10 Wash. 361, 38 Pac. 1127, in reference to a refusal to furnish certain invoices required by the policy.   The court said:

"And it is not for the assured in the face of such an agreement, to determine that because he cannot furnish all the proof that is required, he will refuse to furnish any, or refuse to aid the insurers in any way in determining questions that are of vital importance to them in the case.   In fact, the insured seems from the start to have cavalierly settled this question, both for himself and the other party to the agreement.   He stated in his correspondence that he could not see what would be gained in furnishing these data, if it were possible; then announces that he furnished what he supposed would be conclusive evidence that at the time of the fire he had more goods than the insurance called for, evidently resting upon the proof that he had furnished outside of this requirement.   It might have been conclusive evidence, but, inasmuch as he and the appellant had stipulated what kind of evidence should be required, it was his duty to furnish that evidence if possible, and as far as possible."

See, also, *Astrich v. German-American Ins. Co.,* 131 Fed. 13; *Providence Washington Ins. Co. v. Wolf* (Ind. App.), 72 N. E. 606.

It is admitted that the proofs of loss were not made until more than sixty days after the fire, but appellant contends that these proofs were waived by the insurance company. The principal evidence relied upon as proving a waiver is the

frequent demands made for an inventory without specific mention of the formal proofs. The attorney for assured testified: "The inventory was the only thing they were asking for all along the line. I thought the task was over when we furnished that." It seems, however, that he realized that the formal proofs would be required, since he, without further demand, procured them, though after the time fixed by the policy. If such an inventory as the insurance company demanded had been furnished in time to have been of any practical use there might be some merit in this contention. As it was refused, we find none. There is no evidence of such unfair dealing on the part of the insurer or of attempts to deceive the assured as is found in *Sidebotham v. Merchants' Fire Ass'n*, 41 Wash. 436, 83 Pac. 1028. In this matter, as in the matter of the inventory, the assured seems to have assumed to settle the rights of all parties for himself.

This court is committed to the rule that a failure of the assured to furnish the proof of loss within the sixty days fixed by the policy, without sufficient excuse, forfeits his rights under the policy. *Davis v. Pioneer Mut. Ins. Ass'n*, 44 Wash. 532, 87 Pac. 829; *Davis v. Northwestern Mut. Fire Ass'n*, 48 Wash. 50, 92 Pac. 881.

The findings of the court are sustained by the evidence. They are amply sufficient to support the judgment which is therefore affirmed.

DUNBAR, C. J., CROW, MORRIS, and CHADWICK, JJ., concur.