[No. 7844. Decided April 9, 1909.]

J. M. Cummings, *Appellant*, v. James Dolan, *Respondent*.[1]

Principal and Agent—Power of Attorney—Construction. A power of attorney to convey any land of the grantors, excepting a farm occupied by them in Green River Valley, authorizes the attorney to convey a lot in the Green River Valley that had never been occupied by the grantors.

Vendor and Purchasers — Rescission by Vendee — Defects in Title—Waiver of Objection. Objection to a title for want of identification of a person in the chain of title, who conveyed without signing her middle initial, is waived by failing to call attention to such want of identification, when asking for the correction of certain defects.

Same—Pleading—Necessity of Pleading Want of Access. A vendee cannot refuse to close the deal for want of any ingress or egress to the property where that fact was not pleaded.

Same—Defect in Title—Cloud—Mortgage by Strangers. The existence of mortgages upon property, given by mistake by strangers to the title, are not clouds on the title warranting rescission by the vendee for want of a marketable title, especially after such strangers cured the objection by quitclaim deed.

Same—"Marketable" Title. A contract for a marketable title only calls for one that is reasonably free from doubt.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered October 6, 1908, in favor of the defendant, notwithstanding the verdict of a jury rendered in favor of the plaintiff, in an action to recover earnest money paid under a contract to purchase land. Affirmed.

*John E. Ryan*, for appellant.

*Godman & Embree, Aust & Terhune*, and *W. A. Keene*, for respondent.

Crow, J.—Action by J. M. Cummings vs. James Dolan to recover $500 earnest money paid by plaintiff to the defendant on a contract for the purchase of real estate. A verdict was returned in favor of the plaintiff, but the trial court sustained defendant's motion for judgment notwithstanding the

[1]Reported in 100 Pac. 989.

verdict, and dismissed the action. The plaintiff has appealed.

The undisputed evidence shows that on November 3, 1906, the respondent executed and delivered to the appellant the following written instrument:

"Seattle, Washington, November 3, 1906.

"Received from J. M. Cummings the sum of Five hundred ($500.00) Dollars as deposit and part of purchase price of the property herein described, viz.: The Southeast quarter (SE¼) of the Southeast quarter (SE¼) of Lot twelve (12), Section twenty-six (26), township 21, Range 5 East; also lots six and seven (6 & 7), Section 25, township 21, Range 5 East, containing 91.25 acres lying and being in King County, Washington, together with all appurtenances thereunto belonging. The above deposit to be held by me in trust for the owner. The total purchase price for said property is Thirty-six hundred fifty dollars ($3,650.00), payable as follows: Two thousand dollars ($2,000) cash in hand (including the amount of this receipt) to be paid on approval of abstract, and balance to be paid, viz., Eight Hundred and twenty-five ($825.00) dollars on November 3, 1907, and Eight Hundred and twenty-five ($825.00) dollars on May 3, 1908, with interest on deferred payments at the rate of seven per cent per annum until fully paid, the same to be secured by mortgage on said property.

"The purchaser shall be furnished a complete abstract showing good and marketable title in the owner and be allowed ten days for examination thereof, whereupon he agrees to complete the purchase in the manner and upon the terms herein, and that in case of his failure so to do, the said sum of money hereby receipted for shall be forfeited as liquidated damages.

"It is further agreed that if the title is not good and cannot be made good within a reasonable time thereafter, the said sum of money this day paid shall be refunded.

"Subject to owners approval.     James Dolan, Agent.

"J. H. Van Asselt, Witness.

"I hereby agree to the above provision.

"J. M. Cummings, Purchaser."

that shortly thereafter the respondent furnished an abstract of title which appellant delivered to his attorney for

examination and an opinion, at the same time authorizing the attorney to represent him in passing upon the title and closing the deal; that the attorney directed respondent's attention to certain alleged defects in the title, as shown by the abstract, and requested him to correct the same as follows: (1) An unsatisfied real estate mortgage from W. G. Simpson and Sarah P. Simpson, his wife, to Lilienthal & Co. on lot seven of the land above mentioned; (2) an unsatisfied chattel mortgage from W. G. Simpson and wife to Lilienthal & Co. on a hop crop on lot seven; and (3) an agreement between W. G. Simpson and wife and Lilienthal & Co. reciting that Simpson was the owner of lot seven; that to remedy these alleged defects the respondent procured quitclaim deeds from W. G. Simpson and Sarah P. Simpson, his wife, to lot seven, and an affidavit from W. G. Simpson showing that neither he nor his wife, Sarah P. Simpson, ever had or claimed any interest, ownership, or title in or to lot seven, and that the mortgages and agreement executed by them had by mistake described the land in question, instead of other lands which Simpson and wife did own, and which they actually intended to encumber.

The evidence further shows that the mortgages and agreement were executed in 1892; that Simpson and wife had never been in possession of the land; that the abstract failed to connect them with the chain of title; that it only disclosed the mortgages and agreement as being of record; that the respondent was ready, willing, and able to complete the sale on his part, and offered to do so; that appellant's attorney, after the above corrections of the title had been made, notified respondent's attorney there was no ingress to, or egress from, the land, and that by reason thereof his client would not complete the purchase or make payment. The appellant now calls attention to the further fact that the abstract shows the title to have been at one time held by one Jennie L. Shafer, that it was afterwards conveyed by Jennie Shafer, and that no identification of Jennie L. Shafer and Jennie Shafer as

one and the same person has been furnished.   This alleged
defect was not called to the respondent's attention, nor was
he requested to cure the same by furnishing evidence of iden-
tification, or in any other manner, at any time prior to the
appellant's refusal to complete the purchase.

The appellant further contends that the quitclaim deed
from Sarah P. Simpson was executed by William G. Simpson
as her attorney in fact, that the power of attorney contained
the following:   "Excepting, however, the farm occupied by
me and my husband as a homestead in Green River valley,
King county, Washington, to which land and farm this
power of attorney does not extend"; that lot seven above
described was located in Green River valley, and that a pre-
sumption arises that W. G. Simpson was not authorized to
execute the quitclaim deed under the power of attorney.   The
uncontradicted evidence is that neither W. G. Simpson nor
his wife ever lived upon the land in dispute in this action.
This being the fact, he had authority to execute the quit-
claim deed under his power of attorney.

Appellant vigorously insists that the defects to which he
actually directed the attention of respondent's attorney, were
such a serious cloud upon the title as to render it bad and
unmarketable, and that the instruments obtained by respond-
ent did not cure the same or remove the cloud.   Respondent
contends that the title as originally disclosed by the abstract
was good and marketable; that they were unauthorized in-
struments executed by mistake by strangers to the title; that
they constituted no cloud thereon; that if conceded to be a
cloud, they were in any event cured by the quitclaim deeds
and affidavit; that any technical objection as to the want of
identification of Jennie L. Shafer and Jennie Shafer was
waived by appellant's failure to call respondent's attention
thereto; that the power of attorney authorized the execution
of the quitclaim deed by W. G. Simpson for his wife, and
that the appellant refused to take the land for the sole rea-
son that he claimed there was no ingress or egress, a fact

which he has not pleaded, and upon which he does not and cannot now rely as an excuse for nonperformance of the contract of sale upon his part. We think all of these contentions made by respondent should be sustained. While there is some conflict in the evidence on immaterial matters, there is no dispute as to any material fact. It therefore became a question of law for the court to determine what judgment should be entered. The appellant's principal objection to the title was based upon the supposed interests of Simpson and wife, and Lilienthal & Co., but under the undisputed facts it is apparent that they had no interest whatever in lot seven, they being entirely outside of the chain of title and strangers thereto. The existence and record of the instruments complained of was not a sufficient excuse for rejecting the title, especially after the respondent had procured the quitclaim deeds and affidavit to explain and remove any asserted cloud.

In *Pixley v. Huggins*, 15 Cal. 128, 134, Chief Justice Field said:

"The true test, as we conceive, by which the question, whether a deed would cast a cloud upon the title of the plaintiff, may be determined, is this: Would the owner of the property, in an action of ejectment brought by the adverse party, founded upon the deed, be required to offer evidence to defeat a recovery? If such proof would be necessary, the cloud would exist; if the proof would be unnecessary, no shade would be cast by the presence of the deed."

Under this rule no shade would be cast by the presence of the Simpson mortgages and agreement. In the same case Chief Justice Field further said:

"A conveyance not falling in the chain of title, as from one who never had any connection with the property, would not constitute a cloud upon such title. No action could be supported upon such a conveyance, even in the absence of rebutting proof, any more than upon so much waste paper."

In *Ward v. Dewey*, 16 N. Y. 519, 529, Selden, J., said:

"If an entire stranger assumes to convey the premises to which he has no shadow of title, and of which another is in

possession, no real cloud is thereby created. There is nothing to give such a deed even the semblance of force. It can never be used to the serious annoyance or injury of the owner. A word of explanation would dissipate the apparent cloud."

In *Thompson v. Etowah Iron Co.*, 91 Ga. 538, 17 S. E. 663, the court said:

"There is a vast distinction between a deed which purports to have derived its existence through the true owner of the original and paramount title, and a deed executed by one unconnected with, and an entire stranger to, such title. There would be abundant reason to regard with apprehension a conveyance which, though really void because of some latent infirmity, bears apparently the stamp of force and validity, and assumes to trace its way through connecting links back to the fountain head from which flowed the original title. On the other hand, an instrument which springs from no definite source of right whatsoever can never properly be considered a cloud upon title."

See, also, *Dunklin County v. Clark*, 51 Mo. 60; *Lick v. Ray*, 43 Cal. 83; *Lytle v. Sandefur*, 93 Ala. 396, 9 South. 260.

Appellant's contract calls for a "good and marketable title." The authorities hold that to render a title marketable it is only necessary that it shall be free from reasonable doubt, in other words, that a purchaser is not entitled to demand a title absolutely free from every possible technical suspicion, he can only demand such title as a reasonably well informed and intelligent purchaser acting upon business principles would be willing to accept.

"A purchaser is not entitled to demand a title absolutely free from all suspicion or possible defect. He may claim a marketable title, and that means a title which a reasonable purchaser, well informed as to the facts and their legal bearings, willing and anxious to perform his contract, would, in the exercise of that prudence which business men ordinarily bring to bear upon such transactions, be willing to accept and ought to accept." *Todd v. Union Dime Sav. Inst.*, 128 N. Y. 636, 28 N. E. 504, 506.

Such a title was tendered the appellant. His contract provided that when such title was furnished by respondent he

should complete the purchase, and that in case of his failure so to do, the $500 earnest money should be forfeited as liquidated damages. A good and marketable title having been tendered, and appellant having failed to accept the same, the trial court properly entered judgment in favor of the respondent, notwithstanding the verdict of the jury.

The judgment is affirmed.

MOUNT, GOSE, FULLERTON, and CHADWICK, JJ., concur.

DUNBAR, MORRIS, and PARKER, JJ., took no part.