[No. 7459.   Decided May 4, 1909.]

# E. B. Summy, *Appellant*, v. S. V. Ramsey *et al.*, *Respondents*.[1]

Vendor and Purchaser—Marketable Title. A vendee contracting for an abstract showing a good title is entitled to a marketable title, i. e., one free from reasonable doubt.

Same—Rescission by Vendee. A purchaser will not be allowed to rescind for defects in title, where it appears that he advertised and failed to resell the property at a profit, repented of his contract, obtained an attorney's opinion searching out all possible defects, and refused to return the abstract for correction or afford reasonable opportunity to remove the alleged defects.

Same—Mortgages—Merger. An abstract shows a marketable title notwithstanding reference to an unreleased mortgage, where it appears from the abstract that the mortgage had been assigned to one R. who subsequently obtained the full title and conveyed with full covenants, there being at the time no other outstanding lien and no record of any assignment of the mortgage pursuant to Bal. Code, §§ 4565, 4566; since a merger of the mortgage was shown.

Appeal from a judgment of the superior court for King county, Tallman, J., entered January 3, 1908, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*Alfred E. Parker*, for appellant.

*Austin E. Griffiths* (*Paul Shaffrath*, of counsel), for respondents.

Crow, J.—This action was commenced by E. B. Summy against S. V. Ramsey and wife, to recover $1,000 earnest money paid on a contract for the purchase of real estate. From a judgment in favor of the defendants, the plaintiff has appealed.

Appellant's controlling assignments of error are based upon his contention that the findings of the trial judge are not sustained by the evidence. The evidence shows the following

[1]Reported in 101 Pac. 506.

facts pertinent to a consideration of this appeal: That on or about February 11, 1907, the respondents executed a written instrument, accepted by appellant, whereby they contracted to sell to appellant lots 1 and 2, in block 6, in W. R. Brawley's addition, and the east eighty-eight feet of lot 4, in block A, of Yesler's First addition, all in the city of Seattle, for the sum of $45,000, payable $1,000 cash, $11,500 further cash on completion of the transfer, and $32,500 by note and first mortgage deed on the property; that the contract also contained the following stipulation:

"Abstract of title to be furnished without delay, and the form of the conveyance is to be warranty deed, which is to be delivered within 30 days thereafter upon the receipt of the above $11,500 cash payment, and the securities for deferred payments. And it is agreed and understood by said purchaser that if the title is not good, and *cannot be made good,* this agreement shall be void, and the vendor shall not be liable for any damage, and the said sum of one thousand dollars, earnest money, paid by the purchaser shall be returned to him. If the title is found to be good, and nevertheless not accepted by said purchaser (the deed being tendered), within the time and as herein named, said earnest money is forfeited as the consideration paid for this agreement, and the owners of said premises shall be considered to have fully performed on their part, and may declare this contract terminated. Time is made the essence of this agreement;" . . .

that appellant paid $1,000 cash; that respondents delivered to him abstracts of title, which he handed to his attorney for examination and opinion; that pending such examination, appellant advertised and attempted to resell the property at an advanced price, but was unable to do so; that on March 13, 1907, appellant's attorney delivered to him a written opinion, in which he stated that the abstracts disclosed title in Samuel V. Ramsey, the respondent, and that a deed from him to his wife would convey good title upon correction of certain defects and irregularities; that the opinion then proceeded to point out eighteen separate defects and irregularities; that appellant on March 16, 1907, returned the ab-

stracts and opinion to the respondent Samuel V. Ramsey, with the following letter:

"Seattle, Wash., Mar. 16th, 1907.
"Mr. Samuel V. Ramsey, City.

"Dear Sir:—I enclose herewith the opinion of my attorney Mr. A. E. Parker on title to lots 1 & 2, block 6 of W. R. Brawley's Addition and the east 88 feet of lot 4 in block A of H. L. Yesler's First Addition. From this opinion and after discussing all phases of this opinion with Mr. Parker, I am satisfied that your title is not good and would respectfully ask for the return of the earnest money of one thousand dollars.

"Opinion enclosed.                    Yours truly,
"E. B. Summy;"

that on March 20, 1907, Ramsey wrote an answering letter to appellant, in which he contended there was no question but that the title was good; and stated that he declined to return the purchase money already paid; that without admitting the necessity therefor, he would endeavor to correct the alleged defects; that he would then have the abstracts extended and returned to appellant, and that he would tender a deed and make demand for the remainder of the purchase money.

The evidence further shows that respondent did attempt to make corrections; that on March 26, he returned the extended abstracts, with instruments making some corrections, to appellant for his consideration; that he offered to record such instruments if necessary; that he tendered a good and sufficient warranty deed, and demanded the remainder of the purchase money; that appellant received and retained the abstracts; that he declined to return them to respondent when demanded for further correction and extension; that he claims to have held them as evidence to show that the title tendered to him was not good; that on April 5, 1907, appellant wrote respondent, reiterating his objections to the title, insisting that it could not be made good, refusing to complete the purchase, and demanding a return of the $1,000 paid by him, and that upon respondent's refusal to pay, he commenced this action.

The real issue before us is whether the abstracts did show a good title. Appellant contends that a vendor, who agrees to deliver an abstract showing good title, is bound to furnish one that shows not only a good but also a marketable title, and that the vendee cannot be compelled to accept an unmarketable title. This position is well taken, but suggests the question as to what in law constitutes such a good and marketable title as a reasonable purchaser should be compelled to accept. In *Eggers v. Busch*, 154 Ill. 604, 39 N. E. 619, the supreme court of Illinois defines a marketable title as follows:

". . . title not subject to such reasonable doubt as would create a just apprehension of its validity in the mind of a reasonable, prudent, and intelligent person; one that persons of reasonable prudence and intelligence, guided by competent legal advice, would be willing to take and pay the fair value of the land for."

In *Cummings v. Dolan*, 52 Wash. 496, 100 Pac. 989, this court said:

"Appellant's contract calls for a 'good and marketable title.' The authorities hold that to render a title marketable it is only necessary that it shall be free from reasonable doubt; in other words, that a purchaser is not entitled to demand a title absolutely free from every possible technical suspicion; that he can only demand such title as a reasonably well informed and intelligent purchaser acting upon business principles would be willing to accept."

The well-established rule that a vendee contracting for a good title is entitled to demand and receive a marketable title, has been adopted by the courts to protect him from such defects only as would cause a prudent and cautious purchaser to entertain a just apprehension of future trouble. It was not adopted to arm and equip the vendee with a sword of defense, in the form of technical and unsubstantial objections, to aid him in escaping liability in the event of his desire to avoid the obligations imposed upon him by the contract into which he has voluntarily entered. Courts of justice, in

adopting such a rule, never intended that he should be permitted to suggest technical, frivolous, or unsubstantial objections, and insist upon their removal, in the hope that the vendor could not comply with his demands, and thus enable the vendee to avoid performance and do so without loss.

Maupin, in his work on Marketable Title to Real Estate (2d ed.), § 283, page 707, says:

"It is impossible in the nature of things that there should be a mathematical certainty of a good title. Such a thing as absolute security in the purchase of real estate is unknown. But a bare possibility that a title may be affected from certain causes, when the highest possible evidence of which the nature of the case admits, amounting to a moral certainty, is given that no such cause exists, does not render the title doubtful. The purchaser cannot demand a title absolutely free from all suspicion or possible defect. He can simply require a title such as prudent men, well advised as to the facts and their legal bearing, would be willing to accept. The doubts must be such as will affect the market value of the estate. They must not be made up for the occasion, based on captious, frivolous and astute niceties; they must be such as would induce a prudent man to hesitate in accepting a title affected by them."

From the evidence before us, we are convinced that the appellant, having failed to sell the property at a profit and fearing he could not do so, repented of his contract, caused his attorney to search out all possible objections, and then, by asserting the title to be bad beyond all possibility of cure, endeavored to avoid the performance of his contract and secure a return of his purchase money, without affording the respondent reasonable time within which to remove the alleged technical defects. This being true, he should not be permitted to recover.

It would unnecessarily extend this opinion were we to indulge in a discussion of each and all of the objections made. No one of them was of sufficient importance to justify the action of appellant, or warranted the rejection of the title

by any sincere, prudent, or honest purchaser. We will, however, notice one of the objections made. The abstract disclosed that, on August 16, 1890, H. G. Holmes and wife, then owners of the lots in Brawley's addition, executed and delivered a mortgage for $3,000, to one George M. Van Doren. This mortgage did not appear to have been released of record. The abstract noted the additional facts that, on April 1, 1892, Van Doren, the mortgagee, by his written assignment duly executed, acknowledged, delivered, and recorded, transferred the mortgage to W. H. Ramsey; that afterwards, on May 25, 1896, W. H. Ramsey, by mesne conveyances, duly recorded, obtained title to the lots; that no other liens or incumbrances then existed, and that on June 4, 1901, W. H. Ramsey and wife, by warranty deed containing full covenants of title, conveyed the lots to Samuel Ramsey, from whom the respondent Samuel V. Ramsey has deraigned his title.

Respondent, in answer to appellant's objection that the mortgage was an apparent lien, not being released, insisted that when the mortgage and title both passed to W. H. Ramsey, a merger followed, and that the lien ceased to exist. He also stated that the note was barred by the statute of limitations, that it had been destroyed, and that he had the original mortgage in his possession, which he tendered to the appellant for inspection. Appellant now insists that the mortgage was such an apparent lien as to constitute a serious cloud upon the title and render it unmarketable, it not appearing from the abstract that at the time W. H. Ramsey obtained the title, he still owned the note and mortgage. He further contends that, as there was not, prior to the year 1897, any statute requiring assignments of mortgages to be recorded, the note and mortgage might have been transferred to an innocent holder for value, whose lien under the rule announced in *Howard v. Shaw*, 10 Wash. 151, 38 Pac. 746, would be fully protected.

A release of this mortgage would doubtless have been ob-

tained and recorded by the respondent had appellant allowed him time to do so. In fact, he did obtain one prior to the trial. On the record disclosed by the abstracts a merger was shown. When a greater and lesser, or a legal and equitable estate, meet in the same person, it is the well-settled rule at law that the lesser or equitable estate is merged and ceases to exist. Whether a merger will be recognized in equity depends upon the interests of the parties and the surrounding circumstances. If there are outstanding liens against which it becomes necessary to protect the title, a merger will not occur. Equity will prevent a merger to promote substantial justice, but will not do so when its prevention would promote a fraudulent transaction, or carry into effect any unconscionable wrong.

"Whatever may be the circumstances, or between whatever parties, equity will never allow a merger to be prevented and a mortgage or other security to be kept alive, when this result would aid in carrying a fraud or other unconscientious wrong into effect, under the color of legal forms. Equity only interposes to prevent a merger, in order thereby to work substantial justice." 2 Pomeroy's Equity Jurisprudence (3d ed.), § 794.

In *Chase Nat. Bank v. Hastings*, 20 Wash. 433, 55 Pac. 574, this court said:

"We think the rule is quite well settled that, wherever it is more beneficial to the person taking the fee that the mortgage upon it should stand, that circumstance should control in determining the question of intention, and equity will give effect to it by preventing merger and treating the mortgage as a subsisting charge. But where, as in the present case, the whole title, legal and equitable, unites in the same person and there is no intervening outstanding interest or lien, and it cannot be perceived that the keeping alive of the mortgage will be to the advantage of the grantee or essential to the protection of any right, and where to do so will work a hardship upon third parties, the acceptance of the deed extinguishes the mortgage and a merger is deemed to have taken place."

It could not have been the intention of W. H. Ramsey to continue the mortgage lien; nor does any reason appear why

it would have been to his interest or advantage to do so. An act providing for the record of assignments of mortgages (Bal. Code, §§ 4565, 4566; P. C. §§ 6557, 6558), was passed in 1897. Were we to assume that W. H. Ramsey did not own the mortgage at the time he acquired title, but had transferred it to a *bona fide* purchaser for value, yet his assignee did not file his assignment for record after the act of 1897 came into effect, and W. H. Ramsey could have executed a valid release. When, by his warranty deed with full covenants of title, he, in 1901, conveyed the lots to Samuel Ramsey, he was, so far as the record disclosed, owner of the mortgage, and also of the title on which no other lien then existed. No court of equity would thereafter permit an enforcement of the mortgage lien against the title acquired by Samuel Ramsey or his grantees. If the holder of a mortgage obtains a deed to the mortgaged land and then conveys to another with full covenants of title, the mortgage is discharged by merger. *Pearson v. Bailey*, 180 Mass. 229, 62 N. E. 265. If the holder of a mortgage, having also acquired the title, treats the two estates as coalesced and assumes to convey with full covenants, such conduct is conclusive as to him, and a merger must be deemed to have irrevocably taken place. *Ames v. Miller*, 65 Neb. 204, 91 N. W. 250.

In the case last cited the facts appear to have been quite similar to those the appellant contends might arise here. The opinion is directly in point, and forcibly disposes of appellant's contentions. Appellant's other objections were equally devoid of merit. He was unwilling to allow the respondent any time within which to correct the title or remove the objections stated, but flatly refused to perform the contract on his part.

We find no prejudicial error in the record. The findings are sustained by competent evidence, and support the final judgment, which is affirmed.

RUDKIN, C. J., MOUNT, CHADWICK, PARKER, and DUNBAR, JJ., concur.