[No. 9391.  Department Two.  September 25, 1911.]

## THOMAS MILTON, *Appellant*, v. B. F. CRAWFORD, *Respondent*.[1]

APPEAL—REVIEW—FINDINGS. Where findings are supported by the preponderance of the evidence, they will not be disturbed on appeal.

VENDOR AND PURCHASER—TITLE OF VENDOR—DEFICIENCY. A contract for the conveyance of a certain lot cannot be rescinded because the street had been widened by taking twelve feet off the lot, where the parties had contracted with reference to that known condition.

EVIDENCE—PAROL TO VARY WRITING—DEFICIENCY IN LOT. Parol evidence is admissible to show that in entering into a written contract for the purchase of a lot, the parties knew that part of the lot had been taken for the widening of a street.

CORPORATIONS—POWERS—HOLDING REAL ESTATE. A domestic corporation is expressly authorized by Rem. & Bal. Code, § 3683, to hold, sell and convey real estate; and where the articles authorize it to hold real estate for specific purposes, a properly executed deed vests it fully with title, even though the property is acquired for other purposes.

SAME—PERSONS ENTITLED TO QUESTION—TIME. Only the state can question a conveyance to a corporation as not authorized by its charter; and if not questioned, it can pass good title by a conveyance which cannot be questioned as *ultra vires* after the lapse of a reasonable time.

CORPORATIONS — DEEDS — AUTHORITY OF OFFICERS—PRESUMPTION. Where a deed by a corporation is executed by its president and secretary and authenticated by its seal, it is presumed that it was authorized by the corporation, and *prima facie* title is shown thereby without the production of other evidence.

VENDOR AND PURCHASER—MARKETABLE TITLE—DEED BY CORPORATION. An abstract of title showing a *prima facie* title by a corporate deed, executed by its president and secretary and authenticated by its seal, which has not been questioned for seven years, shows a marketable title, although no resolution or authority for execution of the deed appears; since the same is free from reasonable doubt.

VENDOR AND PURCHASER — CONTRACTS — RESCISSION BY VENDEE — TITLE—CURING DEFECTS. Where time is not made the essence of

[1] Reported in 118 Pac. 32.

the contract, a vendee cannot rescind a contract for defects in title that could be amended on objections made to the abstract, without giving a reasonable opportunity to correct the defects.

SAME—TENDER OF CONVEYANCE. A vendor need not tender a conveyance where the vendee had rescinded the sale for defects in the title, and it is apparent that the tender would have been idle.

Appeal from a judgment of the superior court for King county, Albertson, J., entered December 15, 1910, upon findings in favor of the defendant, in an action to recover purchase money paid on a land contract, after a trial on the merits before the court without a jury. Affirmed.

*Richard Saxe Jones*, for appellant.

*Bogle, Merritt & Bogle*, for respondent.

ELLIS, J.—Action by Thomas Milton against B. F. Crawford, to recover $500 earnest money paid upon a contract for the purchase of real estate. From a judgment in favor of defendant, the plaintiff has appealed.

There are some thirteen assignments of error, but they are all covered by the first: namely, that the evidence does not justify the findings, the conclusions, and the judgment. It appears from the evidence that, on September 11, 1909, a contract was entered into between Milton as purchaser and Crawford as seller, which, omitting caption and signatures, is as follows:

"That the said Thomas Milton agrees to purchase of the said B. F. Crawford, the property known as lot 3, block L, Bell's 5th addition to the city of Seattle; paying for the same the sum of twenty-one thousand, seven hundred sixty and 66-100 dollars, as follows: five hundred dollars down, subject to approval of abstract, and within fifteen days after abstract is delivered, to assume mortgages held by Charles Stuht amounting to ten thousand five hundred dollars, the balance due on taxes, one hundred and 16-100 dollars; and pay to the said B. F. Crawford the balance, ten thousand seven hundred sixty and 66-100 dollars, in good and lawful money.

"And the said B. F. Crawford agrees to furnish abstract, to date, for said lot, within ten days, showing title to same, free and clear of all incumbrances, except those above mentioned, and a regrade assessment of three thousand three hundred twenty-one and 12-100 dollars, and deliver to said Thomas Milton a warranty deed for said lot.

"It is mutually understood that the consideration is twenty thousand dollars, to which is added, five hundred dollars for commission, one thousand one hundred sixty and 50-100 dollars to reimburse said B. F. Crawford for an assessment recently paid, and one hundred and 16-100 dollars for taxes, making the total consideration twenty-one thousand seven hundred sixty and 66-100 dollars. Also that ten days is to be allowed in which to examine the abstract and if title is not found marketable the five hundred dollar deposit is to be returned."

On September 13, 1909, an abstract was furnished and delivered to Milton's attorney for examination. On September 17, 1909, the attorney rendered an opinion of title which, eliminating immaterial parts, was as follows:

"Mr. Milton,

"Sir: I have examined the abstract of title to lot 3, block L, Bell's 5th addition to the city of Seattle, which abstract is composed of 45 pages, the first 35 pages consisting of a copy of an abstract made by King County Abstract Co. and certified to as a true and complete copy by Title Guaranty & Surety Co. This is followed by an extension of the title certified by Osborne, Tremper & Co. on page 41 of the abstract, and the final certificate on page 45 of Booth-Whittlesey-Hanford Abstract Co., the last certificate being numbered 54597 and dated at 8:00 o'clock a. m. on September 13, 1909.

"From an examination of such abstract I find the title to be as follows: . . .

"Third: This title passes by direct deed from Dexter Horton and wife to a corporation known as Royal Dairy Co., Incorporated (page 32 of abstract). The articles of incorporation as shown, beginning on page 30 of the abstract, give as the object and purpose of this corporation a general dairy business for the buying and selling of milk and cream, and manufacture of ice-cream, butter and cheese, and for

such purposes, or, as the articles of incorporation say, 'in connection therewith to acquire and own real estate.' There is nothing in the contract to show that this property was acquired in accordance with such clause of the articles of incorporation, nor do the articles of incorporation directly authorize the Royal Dairy, Incorporated, to sell any real property, and the only right of sale, so far as the abstract shows, arises from the right to purchase, there being no direct provision in the articles of incorporation for the sale of real estate, while the same section provides for the sale of milk and cream and the selling of horses and cattle, and 'such other real and personal property as may be necessary in connection therewith.'

"In this connection there is nothing to show any authority in the two parties, A. W. Pratt and Lenos J. Rickard, who purport to sign the deed found on page 37 of the abstract by which Royal Dairy, Incorporated, sells the property to Charles Stuht. In order to complete this title, it will be necessary to show a meeting of the trustees of the Royal Dairy, Incorporated, authorizing this deed, by-laws of the corporation authorizing its signature by the officers named; and an election by the corporation electing these persons as president and secretary, or a sufficient substitute for all of the requirements, as you have no information from the abstract sufficient to warrant an acceptance of the title from these officers. . . .

"Fifth: The west 12 feet of this lot are taken by the city of Seattle in the widening of Fourth avenue (p. 44 of the abstract). . . .

"Eighth: Subject to the foregoing suggestions, the title to this property is in B. F. Crawford and his wife.

"Very respectfully submitted,

"R. S. Jones, Examining Attorney."

The court found that the contract was executed; that the $500 earnest money was paid; that the abstract was furnished within the ten days required by the contract; that the foregoing opinion of title was rendered by Richard Saxe Jones as attorney for Milton; that shortly afterward Crawford, Milton, and Jones met in the office of the latter, and the objections to title were insisted upon as ground for a return of the earnest money; that Milton tendered back the

abstract, not for the purpose of correction, but in support of his demand for the return of the $500, and refused to proceed further with the contract; that he did demand a return of the $500, and refused to give any further time whatever for the correcting of the abstract in any particular, though the ten days allowed by the contract for examining the abstract had not then expired; that thereafter Jones, acting in behalf of Milton, wrote Crawford a letter insisting especially that the Royal Dairy Company could not convey, and that he had advised Milton to obtain a return of his money, and ending with a demand for such return; that pending the dispute as to the title, Milton purchased another piece of property from another person, and did not desire to take Crawford's property nor intend to go on with the contract with Crawford at all; that the abstract furnished by Crawford shows good and marketable title, and that the defects complained of are technical and could readily be remedied; that before making the contract, Milton was shown the actual boundaries of the property as existing upon the ground, and was told and shown that twelve feet was taken off the lot on the Fourth avenue side for the purpose of widening the avenue, and well knew, before executing the contract, the precise property and dimensions thereof; that the abstract furnished by Crawford was accepted as an abstract, and no objection was made or urged on the ground that it was merely a copy not properly certified other than that found in the opinion of title; that no objection was urged on the ground that there was a deficiency in the quantity of land, and that the objections urged and now set up are without merit.

A careful examination of the evidence convinces us that the court's findings, so far as they relate to unmixed questions of fact, are supported by a preponderance of the evidence. In such cases, this court has repeatedly held that findings of the trial court will not be disturbed on appeal. *Palmer v. Washington Securities Inv. Co.*, 43 Wash. 451, 86

Pac. 640; *Helphrey v. Strobach*, 13 Wash. 128, 42 Pac. 537; *Skeel v. Christenson*, 17 Wash. 649, 50 Pac. 466; *Seattle Merchants Ass'n v. Germania Fire Ins. Co.*, 64 Wash. 115, 116 Pac. 585.

It will be observed that all of the objections raised by the opinion of title, save one, are disposed of by the court's findings on the evidence. The court found, and we think properly, that the abstract, though in large part a copy, was accepted as a sufficient abstract. No original abstract certified as such was ever demanded. The court found, and the finding is amply supported by evidence, that Milton knew that the lot as originally platted had been reduced by the taking of twelve feet for widening Fourth avenue. He knew the dimensions of the lot as it then existed on the ground. Though reduced in area, the property was properly designated as lot 3, block L, Bell's Fifth addition. It was still that lot and all of that lot as it existed at that time. *Norton v. Gross*, 52 Wash. 341, 100 Pac. 734. Parol evidence was admissible to show that the parties contracted and used the description with reference to that known condition of the subject-matter. 17 Cyc. p. 668, par. 3.

But the finding that the abstract furnished by Crawford showed a marketable title presents a question of law. It is raised by the third objection submitted in the opinion of title, and presents the main question for our consideration. The objection consists of two parts: (1) It is contended that the Royal Dairy Company, under its articles of incorporation, could not acquire or transmit title to real estate except as necessary in connection with its dairy business. The clause of the articles of incorporation upon which this criticism is based is as follows:

"Article 2. The object and purposes for which said corporation is formed are as follows: To carry on a general dairy business, including buying and selling milk and cream and manufacturing ice cream, butter and cheese, to buy and erect buildings in connection herewith and to acquire and

own real estate, ranches and to buy and sell horses, cattle and such other real and personal property as may be necessary in connection therewith."

Among the express powers conferred upon domestic corporations by statute (Rem. & Bal. Code, § 3683), is the power to purchase, hold, mortgage, sell and convey real estate. In the absence of a plain abdication thereof in the articles of incorporation, this power is inherent in every corporation organized under our general law, just as are the powers to sue and to appoint officers and agents conferred by the same section. There is room for doubt whether there is any such plain prohibition, either expressed or necessarily implied, in the articles here in question as to abrogate the power conferred by statute. But in any event, where the corporation has the power to purchase and take, though for specific purposes only, a deed properly executed vests it fully with the title, even though the property is acquired and used for other purposes. Warvelle, Abstracts, (3d ed.), § 252; *Hough v. Cook County Land Co.*, 73 Ill. 23, 24 Am. Rep. 230; *Missouri Valley L. Co. v. Bushnell*, 11 Neb. 192, 8 N. W. 389.

The objection urged would be valid only so long as the title remained in the corporation, and even then the title could only be questioned in a proper proceeding by the state.

"In the absence of a clear expression of legislative intention to the contrary, a conveyance of real estate to a corporation for a purpose not authorized by its charter, is not void, but voidable, and the sovereign alone can object. Neither the grantor nor his heirs nor third persons can impugn it upon the ground that the grantee has exceeded its powers." *Kerfoot v. Farmers' and Merchants' Bank*, 218 U. S. 281-286.

See, also, 5 Thompson, Corp. (1st ed.), § 5799; note to *Page v. Heineberg*, 40 Vt. 81, 94 Am. Dec. 381.

"In this respect the *status* of a corporation is similar to that of an *alien*, and the latter can take and hold title to real estate until the state proceeds to escheat it by what is some-

times called *'office found.'* "    5 Thompson, Corp. (1st ed.), § 5795.

See, also, *Oregon Mortgage Co. v. Carstens,* 16 Wash. 165, 47 Pac. 421, 35 L. R. A. 841; *Abrams v. State,* 45 Wash. 327, 88 Pac. 327, 122 Am. St. 914.

"The rule also operates in such a way that, although the state might, in a direct proceeding for that purpose, have overthrown the title of the corporation and escheated the property to its own use,—yet, not having done so, the corporation may in the meantime convey an indefeasible title to another, of whatever estate in the lands had been conveyed to or acquired by it."    5 Thompson, Corp. (1st ed.), § 5797.

See, also, *State ex rel. Atkinson v. World Real Estate Com. Co.,* 46 Wash. 104, 89 Pac. 471.

In the case before us, the abstract shows that the deed to the Royal Dairy Company was executed on September 12, 1901, and the deed from that company to Charles Stuht, Crawford's grantor, was executed on June 10, 1902. It is manifest that, after this lapse of time, neither the state, the corporation, nor any stockholder of the corporation would be permitted to question the purchase or sale of the property as *ultra vires.*

We fail to find that in this respect there is any difference between cases where the inhibition to hold real estate is found in the general law and where it is found in the charter or articles of incorporation of the company.

(2) It is claimed that there is nothing in the abstract to show that Pratt and Rickard, who executed the deed to Stuht, Crawford's grantor, as president and secretary of the corporation, were authorized to do so either by resolution of the trustees or by the by-laws of the corporation. The officers who executed the deed as the act of the corporation were the appropriate officers. The instrument was authenticated by the seal of the corporation. Under such circumstances, the law presumes that the conveyance was authorized, and it was

not necessary to produce further evidence to make a *prima facie* showing of authority.

"A very extensive principle in the law of corporations, applicable to every kind of written contract executed ostensibly by the corporation, and to every kind of act done by its officers and agents in its behalf, is that, where the officer or agent is the appropriate officer or agent to execute a contract, or to do an act of a particular kind, in behalf of the corporation, the law presumes a precedent authorization, regularly and rightfully made, and it is not necessary to produce *evidence* of such authority from the records of the corporation. Under the operation of this principle, a deed or mortgage, purporting to have been executed by a corporation, which is signed and acknowledged in its behalf by its president and secretary, will be presumed to have been executed by its authority. . . . So, proof of the signatures of the officers of a corporation to a release *under seal*, purporting to have been executed by the corporation, is *prima facie* evidence of its due execution. So, where an *undertaking on appeal*, purporting to have been executed by the corporation as *surety*, was signed by its second vice-president and its assistant secretary, with the corporate *seal* affixed, the authority of the officers to execute the instrument was presumed, in absence of evidence to the contrary." 4 Thompson, Corp. (1st ed.), § 5029.

See, also, *Gorder v. Plattsmouth Canning Co.*, 36 Neb. 548, 54 N. W. 830; *Whitney v. Union Trust Co.*, 65 N. Y. 576; *Hutchins v. Byrnes*, 9 Gray 367; *Murphy v. Welch*, 128 Mass. 489; *Hamilton v. McLaughlin*, 145 Mass. 20, 12 N. E. 424; *Morris v. Keil*, 20 Minn. 531; *Yanish v. Pioneer Fuel Co.*, 64 Minn. 175, 66 N. W. 198; *Watkins v. Glas*, 5 Cal. App. 68, 89 Pac. 840.

But it is insisted that this deed furnished only *prima facie* evidence of title. That is, in a sense, true of every other deed in the chain of title. There is always a possibility of attack upon any deed. The deed, though only *prima facie* evidence, having remained unquestioned for more than seven years, is, in our opinion, sufficient to evidence a marketable title, as defined by this court.

"The authorities hold that to render a title marketable it is only necessary that it shall be free from reasonable doubt, in other words, that a purchaser is not entitled to demand a title absolutely free from every possible technical suspicion, he can only demand such title, as a reasonably well informed and intelligent purchaser acting upon business principles would be willing to accept." *Cummings v. Dolan*, 52 Wash. 496, 100 Pac. 989, 132 Am. St. 986.

See, also, *Summy v. Ramsey*, 53 Wash. 93, 101 Pac. 506. While the title shown by the abstract was not technically perfect, and the defects mentioned were therefore properly pointed out by the examining attorney, they were not such as to render the title not marketable.

The finding of the trial court that this defect was technical and could readily be remedied is sustained by the evidence. The appellant met A. W. Pratt, the president of the Royal Dairy Company, and knew that he was the officer of the corporation as purported by the deed. Time was not made the essence of the contract, and the respondent was, therefore, entitled to a reasonable time in which to correct the title by furnishing any proof of authority required to strengthen the *prima facie* title shown by the abstract. But at the first interview, and within the ten days accorded by the contract for examination of title, further time was positively refused. The appellant then assumed the arbitrary attitude of declining to proceed further, demanded a return of the earnest money, and instructed his attorney to sue for it. The fact that Crawford afterwards wrote him that he was advised that the title was perfect and needed no correction is immaterial. It is fairly deducible from the evidence that Milton had determined not to take the property, regardless of any question of title. A. W. Pratt testified as follows:

"I knew Mr. Thomas Milton in the year 1909, and met him here in Seattle the latter part of September of that year. At his request I called at the office of Richard Saxe Jones in the city of Seattle and met Mr. Milton there, and we had a talk. Mr. Milton introduced me to Mr. Jones as being pres-

ident of the Royal Dairy Company, a corporation. He stated
that he was having trouble about the Crawford title to this
lot in dispute in this litigation, and he wanted to know if it
was bought by the Dairy Company. Mr. Milton said that
he had bought another piece of property and had closed the
trade, but he did not want Mr. Crawford to know it, because
he hoped to get back the $500 which he had paid to Mr.
Crawford, and Mr. Crawford might not want to pay it
back if he knew that Milton was buying some other prop-
erty; he asked me to keep still about it, as he did not believe
he would lose anything even if he forfeited the $500, that
the other buy was so much better than the one he had at-
tempted to buy from Crawford, that even if Crawford kept
the $500 he, Milton, would be ahead."

True, this was probably after Milton's first refusal to take
the title; but it tends to explain his arbitrary attitude at that
time. It is clear that if, at the time of the interview with
Pratt, the purchase of other property had been closed, ne-
gotiations for that purchase had taken place prior to that
time.

It is further urged that Crawford did not tender a deed of
the property. While he made no actual tender, he did write
to Milton that the deed had been executed and was ready for
delivery on payment of the balance of the purchase price.
It is obvious that a tender at any time would have been idle.
Milton had from the start declined to proceed further. Un-
der these circumstances, no tender was necessary. Judgment
affirmed.

DUNBAR, C. J., CROW, MORRIS, and CHADWICK, JJ., concur.