[No. 30623. Department One. December 23, 1948]

ROSS P. HEBB et al., Respondents, v. E. H. SEVERSON et al., Appellants.[1]

[1]Reported in 201 P. (2d) 156.

*Barker & Day* and *William J. Walsh, Jr.,* for appellants.

*Lundin & Barto* and *William H. Goucher,* for respondents.

STEINERT, J.—Plaintiffs instituted action to compel specific performance of a contract, denominated an earnest-money receipt, wherein the defendants promised, subject to specified terms and conditions, to purchase certain real property owned by the plaintiffs. This agreement, setting forth the rights and obligations of the parties thereunder, so far as is material here, reads as follows:

"EARNEST MONEY RECEIPT

"Seattle, Washington, March 31, 1947
"RECEIVED FROM E. H. SEVERSON, ANNE M. (His wife), hereinafter called 'purchaser' One Thousand and no/100———
($1000.00) Dollars as earnest money in part payment of the purchase price of the following described real estate in King County, Washington:

Lot thirteen (13), Block three (3), Hebb's Avion
City addition to the city of Seattle, Washington,
commonly known as 5700 East 61st.

"Total purchase price is Twelve Thousand Dollars ($12,-000.00), payable as follows:

"Four Thousand Dollars ($4000.00) cash, including the amount herein receipted for on closing. Balance to be paid from the proceeds of an F.H.A. loan which the purchaser agrees to apply for through Burwell & Morford, within five (5) days from the date of this receipt. It is understood that

purchaser's obligation to purchase is contingent on securing said loan in the amount of Eight Thousand Dollars ($8000.-00). . . .

"Owner shall furnish purchaser, as soon as procurable and within 30 days of date of acceptance of this offer, Puget Sound Title Insurance Company's policy of title insurance or its title report evidencing condition of title.

"If title is not insurable and cannot be made insurable within 60 days from date of title report, earnest money shall be refunded and all rights of purchaser terminated, except that purchaser may waive defects and elect to purchase. But if title is good and purchaser neglects or refuses to complete purchase, the earnest money may, at seller's option, be forfeited as liquidated damages. The agent shall not be responsible for delivery of title.

"The property is to be conveyed by warranty deed, free of encumbrances except: None.

"Rights reserved in federal patents or state deeds, building or use restrictions general to the district, and building or zoning regulations and provisions shall not be deemed encumbrances. . . .

"Purchaser offers to purchase the property on the terms noted.

"The sale shall be closed within five (5) days after loan is completed and title insurance policy or title insurance company's report is furnished by owner. The purchaser and the seller will, on demand of either, deposit in escrow with the company furnishing the evidence of title all instruments and monies necessary to complete the purchase; the cost of escrow shall be paid one-half each by seller and purchaser."

In their answer, the defendants admitted that the above contract of sale had been executed by the parties, but alleged, by way of affirmative defense, that the plaintiffs had failed to comply with the terms thereof in that: (1) A title insurance policy or a report by the title insurance company, evidencing the state of title, was not submitted to the defendants within thirty days after the defendants had signed the agreement; (2) the plaintiffs had failed to make the title insurable within sixty days after the title report was furnished, or at all; and (3) the title to the property in question was not marketable because of the following encumbrances: (a) a right of easement, granted to the city of Seattle, to

maintain a water main upon and across the property; (b) the right of the public to make all necessary slopes for cuts or fills upon the property, in the reasonable original grading of the streets adjacent thereto, as granted in the dedication of the platted addition, and (c) an existing violation of a certain protective restriction, to which all lots in the addition are subject, which restriction provides that "no building shall be erected on any lot . . . nearer than 5 feet to any side of lot line."

The defendants further alleged in their answer that, because of this failure of the plaintiffs to comply with the terms of the agreement, the defendants did timely rescind the transaction and demand the return of their earnest money and all other sums paid over pursuant to the earnest-money contract. They thereupon prayed that the court deny the relief asked for by the plaintiffs and enter a decree rescinding the contract.

Replying to the new matter alleged in the answer, the plaintiffs, in addition to a denial of the truth of some of the allegations contained therein, affirmatively pleaded (1) that any delay on the part of the plaintiffs in furnishing to the defendants, pursuant to the terms of the contract, a title insurance policy or title insurance report had been waived by the actions of the defendants; (2) that the supposed easement right to maintain a water main had been abandoned by the city of Seattle and, therefore, no longer constituted an encumbrance on the land contracted to be sold; and (3) that, in any event, none of the alleged defects set forth in defendants' answer constituted in law an encumbrance on the property.

Upon these issues, framed by the pleadings, the cause was tried to the court, and, after both sides had presented all available evidence and concluded their arguments on the law applicable thereto, the court rendered an oral decision in which it indicated that a decree would be entered in favor of the plaintiffs. The defendants thereupon presented a motion for judgment notwithstanding the oral decision. The court denied the motion and entered its decree commanding

the defendants to accept the warranty deed tendered into court and to pay, or cause to be paid, to the plaintiffs the balance of the purchase price of the property, due under the contract. The decree further directed that, in the event the defendants should fail to specifically perform the contract, a judgment would be entered against them for the balance due under the written agreement. Defendants appealed.

Prior to the trial of this action, the parties thereto entered into a written stipulation, setting forth, as agreed upon, the following facts relative to the suit: On March 31, 1947, the appellants, E. H. Severson and Anne M. Severson, executed and delivered to the respondents, Ross P. Hebb and Irene M. Hebb, the earnest-money receipt set forth above, wherein the appellants offered to purchase from the respondents a city lot, upon which a house had just been constructed, for the sum of twelve thousand dollars. At the same time, appellants deposited one thousand dollars with respondents as earnest money, and, on April 7, 1947, the respondents accepted the offer to purchase and signed the earnest-money agreement.

It was further stipulated by the parties that, for the purpose of securing funds with which to pay in part the balance of the purchase price owing under the contract, the appellants applied to the mortgage loan firm of Burwell & Morford for a loan in the sum of eight thousand dollars. Following the issuance, by the Federal housing administration, of its commitment to insure the proposed loan for the full amount, the appellants, on June 9, 1947, made, executed, and delivered to Burwell & Morford, as mortgagee, their promissory note for eight thousand dollars, together with a real-estate mortgage on the lot above mentioned as security. This mortgage was subsequently recorded, although no part of the loan which it was designed to secure has ever been disbursed by the mortgagee. To insure payment of the remainder of the purchase price, the appellants deposited with the mortgage firm the sum of $3,186.17, but with the instruction to that firm that it should not pay over to the

respondents any part of this fund until it was directed by the appellants to do so.

On June 26, 1947, according to the agreed facts, the appellants, through their attorneys, notified respondents that they were rescinding the transaction, and again advised Burwell & Morford not to pay out any of the sum of money deposited with it until further instructed on the matter by the attorneys for appellants.

It was also stipulated that, on August 4, 1947, the respondents furnished to the appellants a title report which showed the title of the property here involved to be subject to (1) an easement for a water main, but with the notation that the easement had been vacated; (2) the right of the public to make all necessary slopes for cuts or fills upon the lot, in the reasonable original grading of streets, granted in the dedication of the plat; and (3) a declaration of protective restrictions, recorded April 5, 1937. Immediately following this information concerning the declaration of restrictions is a note stating that the title company's inspection of the premises disclosed a breach of one of these restrictions, in that the dwelling house located on the lot involved is less than five feet from the east side line of the premises. The note then continues with the statement:

"The policy to issue will, however, affirmatively insure against loss or damage resulting from such violation and will further affirmatively insure that neither said violation nor any future violation of said restrictions will work a forfeiture or reversion of title to said premises."

Appellants' major assignment of error is that the trial court erred in decreeing that the appellants specifically perform their contract. In support of this assignment, numerous arguments are advanced, but the one to which we shall address our attention and upon which we shall rest our decision is that the title tendered into court by the respondents, though in form a warranty deed covenanting against encumbrances, was in fact subject to the encumbrance, *inter alia,* of a *presently existing violation* of a protective restriction; that therefore the title was unmarketable; and

that it was not made marketable by a showing of willingness on the part of a title insurance company to insure the appellants against loss incurred by them because of that encumbrance.

■ A marketable title is one that is free from reasonable doubt and such as reasonably well informed and intelligent purchasers, exercising ordinary business caution, would be willing to accept. *Cummings v. Dolan,* 52 Wash. 496, 100 Pac. 989, 132 Am. St. 986; *Somers Co. v. Pix,* 75 Wash. 233, 134 Pac. 932; *Moore v. Elliott,* 76 Wash. 520, 136 Pac. 849; *Robinson v. Steele,* 95 Wash. 154, 163 Pac. 486; *Jacobs v. Teachout,* 126 Wash. 569, 219 Pac. 38; *Empey v. Northwestern & Pac. Hypotheekbank,* 129 Wash. 392, 225 Pac. 226; *Moore v. Clarke,* 157 Wash. 573, 289 Pac. 520.

In discussing the meaning of the term "marketable title," this court said in *Moore v. Elliott, supra:*

"A title to be marketable need not be perfect—free from every possible technical criticism, but it must be reasonably safe; that is to say, such that a reasonably well informed and intelligent purchaser, exercising ordinary business caution, would be willing to accept.

" 'The authorities hold that to render a title marketable it is only necessary that it shall be free from reasonable doubt, in other words, that a purchaser is not entitled to demand a title absolutely free from every possible technical suspicion, he can only demand such title as a reasonably well informed and intelligent purchaser acting upon business principles would be willing to accept.' *Cummings v. Dolan,* 52 Wash. 496, 100 Pac. 989, 132 Am. St. 986."

In *Empey v. Northwestern & Pac. Hypotheekbank, supra,* we quoted approvingly the following statement from *Dobbs v. Norcross,* 24 N. J. Eq. 327, having reference to marketable title:

" 'Every purchaser of land has a right to demand a title which shall put him in all reasonable security, and which shall protect him from anxiety, lest annoying, if not successful suits be brought against him, and probably take from him or his representatives, land upon which money was invested. He should have a title which shall enable him not only to hold his land, but to hold it in peace; and if

he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value.'"

An "encumbrance" has been defined by this court to be any right to, or interest in, land which may subsist in third persons, to the diminution of the value of the estate of the tenant, but consistent with the passing of the fee; and, also, as a burden upon land depreciative of its value, such as a lien, easement, or servitude, which, though adverse to the interest of the landowner, does not conflict with his conveyance of the land in fee. *Green v. Tidball,* 26 Wash. 338, 67 Pac. 84, 55 L.R.A. 879; *Linne v. Bredes,* 43 Wash. 540, 86 Pac. 858, 117 Am. St. 1068, 6 L.R.A. (N.S.) 707.

Keeping these definitions in mind, we have carefully examined the earnest-money contract in order to discover what the parties intended, or, more specifically, what intention the law imputes to them from the language used in the contract, relative to the quality of title that the appellants bound themselves to accept. The portion of the contract pertinent to our present inquiry is as follows:

"*If title is not insurable* and cannot be made insurable within 60 days from date of title report, earnest money shall be refunded and all rights of purchaser terminated, except that purchaser may waive defects and elect to purchase. *But if title is good* and purchaser neglects or refuses to complete purchase, the earnest money may, at seller's option, be forfeited as liquidated damages. The agent shall not be responsible for delivery of title.

"*The property is to be conveyed by warranty deed, free of encumbrances except: None.*" (Italics ours.)

As we read this part of the contract, three portions thereof stand out as peculiarly significant on the issue of the intent of the parties. First, if the title is *not insurable,* the appellants may, at their option, terminate the contract; second, if the title *is good,* the appellants are bound to accept it; and third, *the property is to be conveyed by warranty deed, free of encumbrances.* It is to be noted that the only expressed intent as to the subject of title insurance is the provision that, if title is *not insurable,* it need not be accepted, and

that it is only in the event that title is *good* that it must be accepted by appellants.

█ Respondents contend that the intent of the parties, as evidenced by the contract, is that the appellants must accept the title of respondents if it is insurable.

It is without doubt true that a contract for the sale of land may properly contain a provision in effect obligating the vendor to convey only such title as a designated title company will approve and insure; and where such is the case the vendee is, of course, bound by the agreement and is not justified in refusing a title which conforms thereto merely because it is objectionable on other grounds. 55 Am. Jur. 635, Vendor and Purchaser, § 164; Notes (1928), 57 A.L.R. 1322.

We are of the opinion that the contract here under scrutiny contains no such provision. It simply provides that, if the title proves noninsurable, the appellants need not accept it, and that they need only accept it if it is "good."

The terms "good title," "marketable title," "merchantable title," and "perfect title" are used by the courts to convey the same meaning. 55 Am. Jur. 619, Vendor and Purchaser, § 149; Notes (1928), 57 A.L.R. 1282. Accord: *Colpe v. Lindblom,* 57 Wash. 106, 106 Pac. 634.

We have no reason to believe that the parties to the earnest-money agreement here involved contracted with reference to a different meaning for the term "good title" than the commonly accepted meaning, which requires that the title be marketable as hereinbefore defined.

It is to be noted, parenthetically, that even though a title be insurable, it does not follow, necessarily, that the title is also good or marketable. It cannot be gainsaid that any title, no matter how defective, is, from a practical standpoint, insurable, if the premium rate be set high enough, or the list excepting defects which are not insured against be long enough. Therefore, to say that a title is insurable merely means that it is capable of being insured, and not that it is also good or marketable.

■ A separate and independent reason for holding that the parties herein contracted with reference to marketable title is the fact that their agreement provided that the property was to be conveyed by warranty deed free of encumbrances.

Such a provision in a contract cannot be said to be performed merely by the tender of a warranty deed, but the title must in fact be marketable.

While some of the earlier decisions of other courts have taken the position that a covenant to give a warranty deed is satisfied by furnishing such a deed in form, regardless of the true state of the title, this doctrine has been largely abandoned as being overly technical; and the great majority of the courts, including our own, hold to the better rule that the true intent of the parties, as evidenced by such a provision, is not merely that a deed in the form of a warranty deed must be delivered, but that the actual title of the vendor must in fact conform to the deed, *i.e.*, be marketable, or else the vendee need not accept it. 55 Am. Jur. 631, Vendor and Purchaser, § 162; Notes (1928), 57 A.L.R. 1273; *Moody v. Spokane & University Heights Street R. Co.*, 5 Wash. 699, 32 Pac. 751. Accord: *Davis v. Lee*, 52 Wash. 330, 100 Pac. 752, 132 Am. St. 973.

■ Even in the absence of any provision in the contract indicating the quality of the title provided for, the law implies an undertaking on the part of the vendor to make and convey a good or marketable title to the purchaser. 55 Am. Jur. 619, Vendor and Purchaser, § 149; notes (1928), 57 A.L.R. 1256, 1260, wherein Washington cases in support of the rule are collected.

Respondents, however, contend (a) that the appellants had knowledge of the protective restriction at the time they entered into the contract, and that therefore the principles of waiver or estoppel apply, and (b) that the defect is cured by the announced willingness of a title insurance company to insure the appellants against any loss or damage which might be suffered by them as a result of the violation of the protective restriction.

A third ground for contention (which, although it is not urged by respondents, we nevertheless mention because it is disclosed by a reading of the contract set forth herein and should therefore receive attention) is (c) that the earnest-money contract contains the following provision:

"Rights reserved in federal patents or state deeds, *building or use restrictions general to the district,* and building or zoning regulations and provisions *shall not be deemed encumbrances."* (Italics ours.)

■ The first contention, that appellants had knowledge of the protective restrictions prior to the time of their entering into the contract and that they therefore waived the objection or are estopped to deny its existence, is untenable because, even though they may have had knowledge of the restrictions as shown by the declaration of record, there is no evidence that they had any knowledge, at the time the contract was signed or at the time the note and mortgage were executed, that the position of the house on the lot violated these restrictions. On the contrary, the evidence shows that the violation of the protective building restriction was discovered by the appellants at a later time, as the result of a survey made for the purpose of determining the location of a bulkhead which they planned to install on the property, and that they then promptly rescinded the contract, notifying respondents as well as Burwell & Morford to that effect.

■ The second contention, that the defect of the existing encumbrance is cured by a showing that a certain title company is willing to insure the appellants against loss incurred by them because of the existing violation, is also untenable. The parties cite no cases, nor have we discovered any, passing on the question of whether or not an agreement by an insurance company to indemnify a vendee against loss from an encumbrance on the property cures the defect in the title. We do not venture an opinion on what the law is or should be on this point, because the record herein does not show an agreement on the part of a title company to insure the appellants against *all possible loss* that might be in-

curred by them as the result of this encumbrance, nor, for that matter, is any agreement of such nature exhibited.

If we assume, as the record indicates may well be the case, that a title company is willing to bind itself to defend in court any and all suits that might be brought by the adjoining property owners and to pay all judgments and court costs, and if we discount the inconvenience to the appellants resulting from the necessity of participating in such possible suits, still we cannot say that any title company would be willing to so insure the title in favor of a *prospective purchaser* of the property from the appellants, or that any loss to appellants because of a refusal to so insure the title would be within the coverage of the policy which the title company's present report indicates will be offered to these appellants.

■ That the value of a title on resale is an element to be considered in cases such as this is demonstrated by the following language of this court in *Flood v. Von Marcard*, 102 Wash. 140, 172 Pac. 884:

"Few titles are good to a mathematical certainty, nor does the law demand that they shall be so, *but the value of a title on a resale is an element to be considered.*

" 'A purchaser is entitled to a merchantable title, a marketable title—*such a one as will bring in the market as high a price with, as without the objection.*' *Parmly v. Head*, 33 Ill. App. 134.

"While the law will not countenance the idle scruples of one interested in withholding the purchase money (*Brown v. Witter*, 10 Ohio 143), *it will not compel one who seems to be acting in good faith to accept a title if there be reasonable probability of a lawsuit to convince a purchaser on resale, or to quiet the title. Moore v. Elliott, supra.*" (Italics ours.)

■ Finally, the fact that the contract contains a provision that protective restrictions shall not be deemed encumbrances cannot aid the respondents. It is not the *existence* of the protective restrictions, as shown by the record, that constitutes the encumbrance alleged by the appellants; but, rather, it is the *presently existing violation*

of one of these restrictions that constitutes such encumbrance, *in and of itself*. The authorities so hold, on the rationale, to which we subscribe, that to force a vendee to accept property which in its present state violates a building restriction, without a showing that the restriction is unenforcible, would in effect compel the vendee to buy a lawsuit. 66 C. J. 911, Vendor and Purchaser, § 590; *Dichter v. Isaacson*, 4 N. J. Misc. 297, 132 Atl. 481, 138 Atl. 920; *Chesebro v. Moers*, 233 N. Y. 75, 134 N. E. 842, 21 A.L.R. 1270.

 For the particular reasons hereinabove given, we are of the opinion that the trial court erred in granting to the respondents specific performance of the contract. In view of this ruling, it becomes unnecessary to pass upon the other matters assigned by appellants as grounds for the same result.

 In the proceedings before the trial court, the appellants herein requested the affirmative relief of rescission of the contract and asked for the return to them of the earnest money paid to the respondents and all other sums paid by appellants pursuant to the contract. This relief should have been granted. The record shows that the appellants gave timely notice of rescission after learning, through a survey of the property, that the position of the building violated a protective restriction. There is no evidence in the record of any offer by respondents to cure this defect in title; there is only an indication of willingness on the part of a title company to issue, upon certain conditions, its "owners policy of title insurance" in "usual form." Such situation furnishes ground for invoking the rule that, where the vendor covenants to convey title by warranty deed free of encumbrances and he is unable to do so, the vendee may rescind the contract and recover the amount of money paid thereunder. 55 Am. Jur. 923, 930, 935, 936, Vendor and Purchaser, §§ 529, 537, 541, 542.

The mortgage firm of Burwell & Morford, which was originally named as a party defendant in the action, was dismissed from the suit on stipulation of the parties and upon agreement by that firm to abide by the decree of

the court. The decree to be entered should, therefore, in addition to ordering Burwell & Morford to return to the appellants the sum of money paid over to it under escrow agreement, also command that firm to secure the release of the mortgage of record which appellants as mortgagors executed to Burwell & Morford in contemplation of the final closing of the transaction of sale between the parties here involved.

The decree is reversed, with instructions to the trial court to enter in its place a decree rescinding the contract, in accordance with this opinion.

MALLERY, C. J., BEALS, SCHWELLENBACH, and HILL, JJ., concur.

[1]Reported in 201 P. (2d) 145.