EGAN, Appellant, v. McDONALD, Respondent.

(153 N. W. 915.)

(File No. 3643.   Opinion filed August 7, 1915.)

1. **Indians—Indian Lands—Allottee Under Trust Patent—Alienation, Restrictions on, Effect on Allottee, on Heirs—Federal Statute.**

    A restriction, in a trust patent to an Indian allottee, under Act of Congress of March 2, 1889, Chap. 405, 25 Stat. 888, upon alienation of the land so held, for 25 years, is binding not only upon the allottee, but upon his heirs, and such restrictions run with the land.

2. **Indians—Indian Allotments—Restrictions on Alienation, Removal of by Subsequent Statute—Right of Heirs to Sell Land.**

    Under Act Cong. May 27, 1902, Sec. 7, 32 Stat. at Large, 275, providing that the adult heirs of any deceased Indian to whom a trust or other patent containing restrictions upon alienation is issued for land allotted to him, may sell and convey the lands inherited from such decedent, subject to approval of the Secretary of the Interior, and, as to minor heirs, that their interests shall be sold by guardian appointed by the proper court, upon which approval title shall pass, held, that these provisions, upon death of the allottee, in effect removed restriction upon alienation found in a patent issued pursuant to Act of Congress of March 2, 1889, Chap. 405, 25 State. 888, and a deed executed by the adult heirs of the allottee, and approved by the Secretary of the Interior, conveys a merchantable title to such land.

3. **Indians—Restriction on Alienation—Power of Congress to Remove.**

    The federal Government, acting through Congress, has power to remove restrictions upon alienation of land allotted to an Indian, and to change the manner of transferring title thereto.

4. **Courts—State Circuit Court—Indian Heirships to Allotted Lands —Jurisdiction, After Conveyance by Heirs—Termination of Government's Jurisdiction.**

    The jurisdiction of the federal Government over Indian allotment lands is terminated upon execution, by the adult heirs of an Indian allottee, of a deed conveying the land, ap-

proved ·by the Secretary of the Interior, and the land then
came under exclusive jurisdiction of the state courts, whether
such approval was based upon a decree of final distribution of
a state county court, or upon information derived from other
sources.

5.  **Vendor and Purchaser—Merchantable Title—Indian Land—Heirships of Allottee—Jurisdiction of State Circuit Court to Determine.**

Where the state circuit court acquired jurisdiction of heirs
of an Indian allottee in an action to quiet title begun after a
federally approved deed was executed by such heirs, whereby
federal jurisdiction over the land was terminated, the unknown heirs, devisees, legatees, and the executor or administrator of the allottee being made parties, held, that such court
had jurisdiction to determine the title to the land, and its
decree declaring the plaintiff in the suit to be owner in fee,
set the title at rest.

Appeal from Circuit Court, Minnehaha County. Hon.
Joseph W. Jones, Judge.

Action by George W. Egan against Charles S. McDonald, to
recover back part of purchase money on a sale of land. From
a judgment for defendant, and from an order denying a new
trial, plaintiff appeals. Affirmed.

· *George W. Egan,* Appellant, pro se.

*Bailey & Voorhees,* for Respondent.

(1) Under point one of the opinion, Appellant cited: United
States v. Rickert, 188 U. S. 432; Beck v. Flournoy Live Stock
& Real Estate Company, 65 Fed. 30; Williams v. Steinmetz,
(Okla.) 82 Pac. 986; Jackson v. Thompson et al., (Wash.) 80
Pac. 454; Act Cong. March 2, 1889; Bowling v. United States,
191 Fed. 19, 34 Sup. Ct. 659; Goodrum v. Buffalo, 162 Fed.
817.

Respondent cited: 23 U. S. St. at L. 76, p. 96; 24 St. L.
388; Act Cong. March 2, 1889, 25 St. L. 888; 32 St. L. 245,
Sec. 7.

(2) Under point two of the opinion, Appellant cited: Nelson v. John, (Wash.) 86 Pac. 933.

(4) Under point four of the opinion, Appellant cited: McKay v. Kllyton, 204 U. S. 457.

Respondent cited: 32 St. L. (U. S.) 275; United States v.
Thurston, 143 Fed. 287; National Bank of Commerce v. Anderson, 147 Fed. 87; United States v. Leslie, 167 Fed. 670; United

States v. Bellm, 182 Fed. 161; United States v. Comet Oil & Gas Co., 187 Fed. 674.

(5) Under point five of the opinion, Respondent cited: Act Cong. March 2, 1889, Sec. 11, 25 St. L. 891; 24 St. L. 388; 32 St. L. 275, Sec. 7; United States v. Park Land Co., 188 Fed. 383; Blauw v. Love, 9 Kans. App. 55, 57 Pac. 258; Lomax v. Pickering, 173 U. S. 26; Lykins v. McGrath, 184 U. S. 169; 22 Cyc. 137; Civ. Code, Sec. 2347; Maupin on Marketable Title to Real Estate, 707.

POLLEY, J. The questions to be decided on this appeal, as stated by appellant in his brief, are: First, did respondent have, and did his abstract show, merchantable title on the 1st day of March, 1912, to the land described in the complaint? And, second, was respondent in a position to, and did he, by warranty deed, convey merchantable title to said premises? A determination of the first question will dispose of the second.

The land—title to which is the subject of this controversy—is a 320-acre Indian allotment, situated in Buffalo county. The instrument evidencing the allottee's title is designated as a "Trust Patent." It was issued in December, 1895, and the portion thereof that is material to this case is as follows:

"* * * * Now, know ye, that the United States of America, in consideration of the premises and in accordance with the provisions of the eleventh section of said act of Congress of the 2nd March, 1889, hereby declares that it does and will hold the land thus allotted (subject to all the restrictions and conditions contained in said eleventh section) for the period of twenty-five years in trust, for the sole use and benefit of the said Hin-Tun-Ka-Sau, or Weazel, or in case of his decease, for the sole use of his heirs according to the laws of the state or territory where such land is located, and that, after the expiration of said period, the United States will convey the same by patent to said Indian or his heirs, as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever; provided that the President of the United States may, in his discretion, extend the said period by a term not exceeding ten years; and if any lease or conveyance shall be made of said lands, or any contract made touching the same before the expiration of the time above

mentioned, such lease or conveyance or contract shall be absolutely null and void."

Some time after the issuance of this patent, the allottee died, and respondent claims title through a deed purporting to have been executed by the allottee's heirs. It will be noted that this patent does not vest, nor purport to vest, in the allottee the fee to the land. It gave to him the right to the possession and use thereof, but he could not lease it to another, nor could he convey or incumber the title. This being the situation at the time of, allottee's death, it is contended by appellant that the allottee's heirs acquired no greater right in the premises than was possessed by their ancestor, and that therefore they conveyed no title by their deed to the respondent, that the fee to the land must remain in the government until it is conveyed by subsequent grant, and that the restriction upon the alienation of the land found in the patent must continue for at least 25 years.

[1] Appellant devotes a large portion of his argument to this proposition, and, in support thereof, cites the following cases: Jackson v. Thompson, 38 Wash. 282, 80 Pac. 454; Bowling v. United States, 191 Fed. 19, 111 C. C. A. 561; Goodrum v. Buffalo, 162 Fed. 817, 89 C. C. A. 525. These cases, however, are not in point. They merely go to the extent of holding that "restrictions upon alienation," such as is contained in the patent here under consideration, are binding, not upon the allottee alone, but that such restrictions run with the land, and are as binding upon the heirs of the allottee as they are upon the allottee himself. This, of course, is a correct statement of the law as it existed at the time of the issuance of the patent.

[2] But it is claimed by respondent that such legislation was enacted, and such proceedings were had, subsequent to the issuance of said patent, that the heirs of the allottee were clothed with power to alienate the land, and that title thereto passed by their deed. This claim is based upon the provisions of an act of. Congress approved May 27, 1902. Section 7 of said act, found at page 275, 32 Statutes at Large, is as follows:

Sec. 7. "That the adult heirs of any deceased Indian to whom a trust or other patent containing restrictions upon alienation has been or shall be issued for lands allotted to him may sell and convey the lands inherited from such decedent, but in

case of minor heirs their interests shall be sold only by a guardian duly appointed by the proper court upon the order of such court, made upon petition filed by the guardian, but all such conveyances shall be subject to the approval of the Secretary of the Interior, and when so approved shall convey a full title to the purchaser, the same as if a final patent without restriction upon the alienation had been issued to the allottee. All allotted land so alienated by the heirs of an Indian allottee and all land so patented to a white allottee shall thereupon be subject to taxation under the laws of the state or territory where the same is situate: Provided, that the sale herein provided for shall not apply to the homestead during the life of the father, mother or the minority of any child or children."

[3] The effect of this provision was, in case of the death of the allottee, to remove the "restriction upon alienation" found in the patent here under consideration. In case of the death of the allottee, his allotment may be sold by his heirs themselves, if adult, and by the guardians of the heirs where they themselves are minors. This is the plain import of the language used, and that the government, acting through Congress, had the same power to remove the restriction upon alienation that it had to place it there in the first instance; and could change the manner of transferring title to another cannot be questioned.

[4] At the trial of the cause, there was received in evidence a decree of final distribution of the estate of the allottee entered by the county court of Buffalo county, in which it is expressly found and decreed that the parties who undertook to convey the allotted land are the sole heirs of the allottee; also a decree of the circuit court within and for Buffalo county, in an action between Chas. S. McDonald, who is the defendant in this action, and the unknown heirs at law, devisees, legatees, and the executor or administrator of the allottee, wherein the said Chas. S. McDonald is decreed to be the owner in fee of the said allotment. It is conceded that the heirs of the allottee are adults, and no question can be raised as to their right to convey the land subject, of course, to the approval of the Secretary of the Interior. It is contended by appellant that these decrees were incompetent for any purpose, because, as contended by appellant, the allottee and his heirs being wards of the federal government, the federal court

alone had jurisdiction over them and their property, and that neither the county court of Buffalo county nor the circuit court of that county had judisdiction to determine who were the heirs at law of the deceased allottee, nor to determine the question of title to the allotment. Whether or not the county court of Buffalo county had jurisdiction to decide the question of heirship, it is not necessary to determine. The validity of the conveyance from the heirs of the allottee depended upon the confirmation and approval of the Secretary of the Interior. The deed purported to have been executed by all of the heirs of the allottee, and was approved by the Secretary of the Interior as a deed from all of such heirs. Whether that office acted upon the decree of final distribution entered by the county court of Buffalo county, or based its conclusion as to heirship upon information derived from some other source, it is not necessary to inquire. The approvel of the deed terminated the jurisdiction of the government over the land conveyed by that deed and, from that time, the land was under the exclusive jurisdiction of the state courts. King v. McAndrews, 50 C. C. A. 29, 111 Fed. 860.

[5] That the circuit court of Buffalo county acquired jurisdiction of the heirs of the allottee is not questioned. Therefore that court had jurisdiction to determine the title to the land, and its decree declaring defendant to be the owner in fee thereof set the matter of title at rest. From this it follows that respondent was possessed of a merchantable title to the allotment on the 1st day of March, 1912. That respondent was then, and at all times since then has been, ready and willing to convey such title to defendant upon the payment of the balance of the purchase money is not questioned. Appellant stated on the argument that he had no desire to rescind the contract of purchase if he could get the kind of title he had contracted for. Therefore it is not necessary to consider the question of rescission presented by the printed briefs.

The judgment and order appealed from are affirmed.