TRIPP, Respondent, v. SIELER et al., Appellants.

(161 N. W. 337.)

(File No. 3969. Opinion filed February 16, 1917. Rehearing denied July 20, 1917.)

1.　**Indians—Conveyance of Allotments Lands—Divestiture of Federal Title and Jurisdiction—Allottees' Approved Deed, Effect.**

21—Vol. 38, S. D.

A deed of Indian allotment lands by heirs of allottee, approved by Secretary of the Interior, not only divested the federal government of a title and terminated its jurisdiction over the land, but transferred exclusive jurisdiction thereover to state courts.

**2.  Same—Indian Lands—Alienation by Allottee's Heirs—"Refractory Indian," Immateriality of His Status as Conveying Heir—Federal Statute.**

Under Act Cong. May 22, 1902, Chap. 888, Sec. 7, 32 Stat., 275 (U. S. Comp. St. 1913, Sec. 4223), authorizing adult heirs of a deceased allottee of an Indian allotment to sell and convey lands inherited from him, and that such conveyance when approved by Secretary of the Interior conveys full title to purchaser, the same as though no restriction existed against alienation by allottee, held, that the objection, by a purchaser of Indian land from such heirs, that one of them was incompetent to convey because he was a "refractory Indian," was untenable; said statute making no distinction between Indians who are known as refractory and those not refractory.

**3.  Same—Conveyance of Indian Allotment Lands—Acknowledgement of Deed—Curative Law, Effect.**

Where a deed by heirs of Indian land allottees, was recorded in the office of the register of deeds in the proper county, before enactment of Laws 1911, Chap. 3, curing any defect, omission, or informality in the certificate of acknowledgment of such deeds, held, any defect in the acknowledgment of the deed was thereby cured, and the deed, or the record thereof, was admissible in evidence.

**4.  Appeals—Error—Land Purchase, Setting Aside, For Unmerchantable Title—Finding re Encumbrances, Conclusiveness of.**

In a suit to cancel a land sale contract and to recover back payments, on ground that defendants could not furnish a merchantable title, held, that where plaintiff alleged and trial court found that defendants and another claimed some interest in the land, which, if any, was inferior to plaintiff's, such finding was conclusive upon appeal.

**5.  Vendor and Purchaser—"Merchantable Title" Defined—Possible Technical Defects, Immateriality.**

A "merchantable title" does not mean a title free from every technical defect that can be conjured up; it is only necessary that the title shall be free from reasonable doubt.

**6.  Same—"Merchantable Title"—Mortgage by Stranger to Title, Whether a Cloud.**

A mortgage upon land, executed by one not appearing to have had any title to the property, nor to have been connected in any way with the chain of title thereto, and not made at the owner's request, nor with his consent, does not constitute a

cloud upon the title, since the owner's possession could not be disturbed by anyone claiming through or under said mortgage, nor would he be called upon to introduce evidence in order to defeat an action for possession by one claiming thereunder.

7. **Same—Assignee of Sale Contract, Rights of, Knowledge of, of Facts Concerning Title, Effect.**

One to whom land purchasers have assigned their contract, acquired all of assignors' rights thereunder; but, having had knowledge of all facts concerning the title to the Indian lands involved, he acquired no greater rights thereunder than his assignors had at time of the assignment.

8. **Same—Objections to Title, Waiver of, by Default Below—Waiver by Vendee's Payments.**

Vendees of land from one claiming under a deed from heirs of a deceased Indian allottee, by making purchase price payments, waived the objection to alleged defects in title in that the record did not show probate of the allottee's estate, or his debts paid, or that those executing the deed were all of the Indian heirs.

9. **Indians—Conveyance by Allottee's Heirs—Recitals of Special Indian Agent as to Heirs, Effect.**

Recitals in a report made to Commissioner of Indian Affairs by special federal Indian agent, naming three parties, who exe_ cuted a deed to a deceased allottee's land, as the sole heirs of allottee, specifying the amount of purchase money to which each was entitled and stating that there was no dispute as to lawful heirs, did not amount to adjudication that the parties executing the deed were sole heirs of the allottee, nor would approval of the deed by Department of the Interior do so.

10. **Indians—Conveyance by Allottee's Heirs—Cancellation of Vendor's Title—Recitals of Indian Office, Burden of Proof Under.**

In a suit to cancel a contract of sale of Indian allottee lands, held, that where a special federal Indian agent reported to Commissioner of Indian Affairs reciting that the three parties executing a deed to an Indian allotment as heirs of deceased allottee were the sole heirs, such deed being approved by the Secretary of the Interior, the deed conveyed good prima facie title, and it was incumbent upon the purchaser of the land from one claiming under such deed to show existence of other heirs before he could rescind the sale.

Appeal from Circuit Court, Lyman County. Hon. WILLIAM WILLIAMSON, Judge.

Action by Robert B. Tripp, against Nicolaus Sieler and others, to set aside a land sale contract and to recover back purchase money payments. From a judgment for plaintiff, and,

from an order denying a new trial, the named defendant appeals. Judgment and order reversed.

*Charles F. Tym,* and *Gamble, Wagner & Danforth,* for Appellant.

*Dillon & Warren,* for Respondent.

(3) To point three of the opinion, Respondent cited: Civ. Code, Secs. 971, 962.

(5) To point five of the opinion, Respondent cited: Mays v. Blair, (Ark.) 179 S. W. 332; Sec. 2347, C. C.; Black H. N. B. v. Kellogg, 4 S. D. 312; Godfrey v. Bram, 27 id. 218, 130 N. W. 442; Crosby v. Wynkcop, Id. 175.

(6) To point six of the opinion, Appellants cited: Cummins v. Doland, (Wash.) 100 Pac. 989.

Respondent cited: Pol. Code, Scs. 868, 869; Fullerton Lumber Co. v. Tinker, 22 S. D. 427, 118 N. W. 700, 18 Ann. Cases, 11; Balch v. Arnold, (Wyo.) 59 Pac. 434; Doran v. Dazey, 64 N. W. 1023, 5 N. D. 167.

(8) To point eight of the opinion, Appellants cited: Thornburg v. Doolittle, (Iowa) 123 N. W. 1003.

Respondent cited: 39 Cyc. 1926.

(9) To point nine of the opinion, Appellants cited: Sec. 7, Act of Congress May 27, 1902, 32 Statutes at Large, 275; Egan v. McDonald, (S. D.) 153 N. W. 915; Hallowell v. Cummins, C. C. A. 210 Fed. 793; United States v. Jacobs, 195 Fed. 707; United States v. Thurston County, 8th C. C. A. 143 Fed. 287; Thompson v. Hill, 150 Pac. 203.

Respondent cited: McKay v. Kalyton, 204 U. S. 458, 51 L. Ed. 566, 27 Sup. C. Rep. 343; Parr v. Colfax, 132 Fed. 1004; Parr v. U. S. 153 id. 462; Parr v. Colfax, 117 C. C. A. 48; Hollowell Case, ( U. S. Sup. Ct.) Lawyers' Advance Opinions, No. 6, Feb. 15, 1916; Sparkman v. Devenport, 160 S. W. 410.

POLLEY, J. This action grew out of a contract to purchase a quarter section of land in Todd county. The respondent, who brings the action for the purpose of setting aside the contract and recovering back certain sums that have been paid on the purchase price, contends that the defendant is not able to furnish a merchantable title such as is contemplated by the contract.

The land involved is an Indian allotment. The instrument evidencing the allottee's title is designated as a "trust patent" and

contains provisions and restrictions upon alienation by the allottee similar to those found in a like instrument set out in Egan v. McDonald, 36 S. D. 92, 153 N. W. 915.

Some time after the issuance of the so-called trust patent, the allottee died, and thereafter, on the 27th day of January, 1909, certain parties, purporting to be his heirs at law, executed a deed conveying said land to appellant. On the 19th day of November, 1910, the contract of sale involved in this action was entered into between appellant and one Heinert. On the same day, said Heinert assigned said contract to defendants F. H. and E. A. Guenthner, and on the 19th day of December, 1914, said Guenthners assigned said contract to respondent. By the terms of the said contract, appellant agreed to deliver a deed and abstract showing good and sufficient title on the 19th day of November, 1911. Said contract contained the following provisions:

"It is understood and agreed that, in case of the failure of title from any cause, or should the government refuse to approve the original sale of said lands, then this contract is to be cancelled and settled by the prompt return of all money paid by the purchaser, including taxes.

"As soon as said purchase money and the interest thereon shall be fully paid, said party of the first part agrees to make, execute and deliver to said party of the second part, a good and sufficient warranty deed conveying said real estate to purchaser in fee simple, free of all incumbrance, except as to taxes for the year 1910, and subsequent years, also an abstract of title for said premises."

[1] The deed from the heirs of the allottee to the appellant was duly approved by the Secretary of the Interior on the 27th day of July, 1909, pursuant to the provisions of section 7 of an act of Congress approved May 22, 1902, and found at page 275 of 32 Stat. at L. (U. S. Comp. St. 1913, § 4223). The execution of this deed and the approval thereof by the Secretary of the Interior not only divested the government of the title and terminated the jurisdiction of the government over the land conveyed by the deed, but it transferred the exclusive jurisdiction over said land to the state courts. Egan v. McDonald, supra.

On and between the 17th day of April, 1912, and the 11th day of August, 1914, the Guenthners made four several payments,

aggregating some $2,000, to apply on the purchase price of the land. Shortly after the assignment to plaintiff, plaintiff made certain objections to appellant's title, and, contending that appellant was unable to deliver the kind of title specified in said contract, brought this action to recover from appellant all the money that had been paid him on the purchase price of the land by plaintiff's predecessors in interest. The Guenthners are named as defendants but entered no appearance in the case. The plaintiff had judgment as prayed for in the complaint, and defendant Sieler appeals.

[2] It is first contended by the respondent that one of the alleged heirs was not competent to execute said deed. This contention is based upon the fact, as found by the trial court, that one of the said heirs is what is known as a "refractory Indian" and, for that reason, was incompetent to execute the said deed. This is wholly immaterial. Section 7 of the federal statute above referred to provides that the adult heirs of a deceased allottee may sell and convey lands inherited from a deceased allottee, and, when such conveyance is approved by the Secretary of the Interor, it conveys the full title to the purchaser the same as though there had been no restriction upon the power of alienation by the allottee. This statute makes no distinction between Indians who are known as refractory and those who are not refractory. Neither of them is considered competent to dispose of land so inherited without the consent and approval of the Secretary of the Interior, and it is for that reason that the approval by the Secretary of the Interior is necessary before the title passes.

[3] It is also contended by respondent that the deed from the alleged heirs of the allottee to the defendant was not acknowledged before any officer authorized to take acknowledgments, and that, for that reason, said deed was not entitled to record and does not constitute good record title. The acknowledgment in question was taken on the 27th day of January, 1909, by a person who signs himself as follows: "Edward B. Kelley, Supt. & Spl. Dist. Agent, Department of the Interior, Office of Indian Affairs." Sections 970-973, inclusive, Civ. Code, as amended by chapter 3, Laws of 1907, enumerate the various officers who were authorized to take acknowledgments in January, 1909. By chapter 2, Laws of 1911, Indian superintendents and agents are author-

ized to take acknowledgments in Indian country, provided such superintendent or agent has filed for record, in the office of register of deeds for the county in which such superintendent or agent is stationed, his certificate of appointment as such superintendent or agent, signed by the Secretary of the Interior. This law, however, is not retroactive, and, were it not for the provisions of chapter 3, Laws of 1911, said acknowledgment would be invalid. Said chapter 3 reads as follows:

"Sec. I. Any instrument affecting real property, which was, previous to the time of the passage and approval of this act, copied into the proper book of record, kept in the office of any register of deeds, shall be deemed to impart, after that date, notice of its contents to subsequent purchasers and incumbrancers, notwithstanding any defect, omission or informality in the execution of the instrument, or in the certificate of acknowledgment thereof, or in the absence of any such certificate, the omission of any notarial or corporate seal, from such instruments; but nothing herein shall be deemed to affect the rights of purchasers or incumbrancers previous to the date of this act going into effect. Such instruments, the records of the same or certified copies thereof, may be read in evidence with the same effect as though such instruments were duly acknowledged, and recorded with notarial and corporate seals."

[3] The deed in question had been recorded in the office of the register of deeds of the proper county before the passage or approval of the above act. This cured the defect in the acknowledgment, and the said deed, or the record thereof, was properly admissible in evidence.

[4] It is next contended by respondent that appellant's title to said land is incumbered by an outstanding mortgage. It appears from the record that some time after the contract of sale was executed one Buechler executed a certain mortgage on the premises described in the contract. Buechler, however, does not appear to have had any title to the property. It is not claimed that the said mortgage was made at appellant's request nor with his consent, nor does he appear to have had any knowledge of such mortgage until it appeared in the abstract of title. It is not shown that Buechler was ever connected with the chain of title in any way, nor that he claimed any rights in the premises that

were superior to the rights of plaintiff. On the other hand, plaintiff alleged in his complaint, and the trial court found as a fact:

"That defendants  *  *  *  and Christ Buechler claimed some interest in or upon said land; that said interests, if any, are inferior to that of this plaintiff."

[5] This finding is conclusive upon the plaintiff and, in view of such finding, it must be held that whatever interest Buechler may have had in the premises is inferior to the interests of the plaintiff. Under these circumstances, appellant contends that said mortgage constitutes no incumbrance upon the said premises and casts no cloud upon his title thereto. Courts do not seem to be unanimous in regard to just what will constitute a cloud upon the title to real property but they seem to be generally agreed that a conveyance or incumbrance attempted by one who has no interest in the property and is a stranger to the chain of title does not constitute a cloud upon such title. In Pixley v. Huggins, 15 Cal. 128, Chief Justice Field stated the rule as follows:

"The true test, as we conceive, by which the question whether a deed would cast a cloud upon the title of the plaintiff may be determined, is this: Would the owner of the property, in an action of ejectment brought by the adverse party, founded upon the deed, be required to offer evidence to defeat a recovery? If such proof would be necessary, the cloud would exist; if the proof would be unnecessary, no shade would be cast by the presence of the deed. If the action would fall of its own weight, without proof in rebuttal, no occasion could arise for the equitable interposition of the court; as in the case of a deed void upon its face, or which was the result of proceedings void upon their face, requiring no extrinsic evidence to disclose their illegality."

Since that time this rule seems to have been generally adopted by the courts. Cummings v. Dolan, 52 Wash. 496, 100 Pac. 989, 132 Am. St. Rep. 896; Ward v. Dewey, 16 N. Y. 519; Thompson v. Etowah Iron Co., 91 Ga. 538, 17 S. E. 663; Lick v. Ray, 43 Cal. 83; Lytle v. Sandefur, 93 Ala. 396, 9 South. 260. A "merchantable title" does not mean a title that is free from every technical defect that can be conjured up. As is said in Cummings v. Dolan, supra, the authorities hold that:

"To render a title marketable, it is only necessary that it shall be free from reasonable doubt; in other words, that a purchaser is not entitled to demand a title absolutely free from every possible technical suspicion. He can only demand such title as a reasonably well informed and intelligent purchaser, acting upon business principles, would be willing to accept."

And in Todd v. Union Dime Sav. Inst., 128 N. Y. 636, 28 N. E. 504, it is said:

"A purchaser is not entitled to demand a title absolutely free from all suspicion or possible defect. He may claim a marketable title, and that means a title which a reasonable purchaser, well informed as to the facts and their legal bearings, willing and anxious to perform his contract, would, in the exercise of that prudence which business men ordinarily bring to bear upon such transactions, be willing to accept and ought to accept."

[6] Tested by this rule, the mortgage complained of by respondent does not constitute a cloud upon appellant's title. Appellant's possession could not be disturbed by any one claiming through or under the said mortgage. Neither could he be called upon to introduce evidence in order to defeat an action for possession by one claiming under the said mortgage. Such an action would fall of its own weight.

[7] While the question does not appear to have been presented to, or to have been passed upon by, the trial court, one of the objections urged by respondent to appellant's title is that it does not appear from the record that the estate of the allottee had ever been probated or that his debts had been paid, nor that the parties who executed appellant's deed, assuming that said parties were heirs of the allottee, are all of the heirs of said allottee. Whatever might have been the merits of this objection, had it been timely made, we are of the opinion that it was waived by the appellant in this case. It is true that, by the assignment from Guenthners, respondent acquired all their rights under the contract; still having had knowledge of the material facts, he acquired no greater rights thereunder than the Guenthners had at the time the assignment was made. It appears from the terms of the contract that respondent knew the source of appellant's title. He knew that it was necessary that appellant's deed, in order to become effective, must be approved by the Secretary of the

Interior, and it was stipulated that the contract should be canceled and all sums of money paid on the purchase price should be returned to the purchaser if the deed was not so approved. But, the deed having been so approved, the contract was not subject to cancellation on that account.

[8] During the month of May, 1911, appellant furnished to the Guenthners, who then owned the contract, an abstract of title, showing all the facts concerning the condition of the title at that time. Thereafter and prior to the assignment to respondent, they made four payments on the purchase price of the land. By making such payments, they waived objection to the said apparent defects in appellant's title, and, as we have already seen, respondent acquired no greater rights than was possessed by the Guenthners at the time of the assignment. Respondent is therefore estopped from making such objections after the assignment.

That respondent had full knowledge of the alleged defects that he is now urging in appellant's title appears from a letter he wrote to appellant before taking the assignment. In this letter he said:

"It appears that the patent ran to a man who died before any conveyance, and there was never any administration of his estate, whereby it appears his debts were all paid, or who all of his heirs were. There is then a conveyance by some persons who represent themselves as heirs, do not say they are all of the heirs, or that the debts were paid, and it would make no difference if they did, for their statements could affect them only. It impresses me this is not a good record title."

If respondent was impressed that appellant's title was not a "good record title," the question that naturally presents itself is: Why did he purchase it? He knew in advance what he was getting, and if he did not consider the title "good," he should have seen that apparent defects, if any, were removed before he made the purchase. But be that as it may, in our opinion, the alleged defects relied upon by respondent are not of such a nature as to entitle respondent, in any event to rescind the contract and recover the purchase money that had been paid, nor to deprive appellant of his right to recover the balance due on the purchase price. In the first place, there is no suggestion that the deceased allottee left any debts; and, in the second place, we know of no

law, either state or federal, that makes an Indian's debts a lien on land that is held in trust for him by the United States government.   Upon the other proposition, the situation is the same.

[9, 10] The action of the Secretary of the Interior in approving the conveyance from the heirs of the allottee to the appellant is based upon a report made to the Commissioner of Indian Affairs by a special United States Indian agent.   In this report, said agent named the three parties who executed the deed to appellant as the sole heirs of the allottee, specifying the amount of the purchase money to which each one was entitled, and also stated:  "There is no dispute as to the lawful heirs."   While such recitals, nor the approval of the deed by the Interior Department, do not amount to an adjudication that the parties who executed the deed are the sole heirs of the allottee (Jennings v. Wood, 192 Fed. 507, 112 C. C. A. 657), the deed executed and approved under the above circumstances conveys good prima facie title, and it was incumbent upon the respondent to show the existence of other heirs before he can defeat appellant's title on that account.   A mere possibility that some defect, not appearing of record, may exist or may arise in the future, is not sufficient to cast a reasonable doubt on an apparently good title. Spencer v. Lyman, 27 S. D. 471, 131 N. W. 802.

The possible defects pointed out and relied upon by respondent are not sufficient to entitle him to rescind and recover the purchase money that had been paid, and the judgment and order appealed from are reversed.