# CASES
## ARGUED AND DETERMINED
### IN THE
# Supreme Court of South Dakota

DAUGHERTY, Respondent, v. McFARLAND, et al., Appellants.

(166 N. W. 143.)

(File No. 4248.   Opinion filed January 18, 1918.   Rehearing denied
February 14, 1918.)

1.  **Indians—Title From Heirs Under Trust Patent—Minor's Interests,
    Heirship Identity—Transfer Through "Proper Court" Under
    Federal Statute—Probate Court, Whether Having Jurisdiction
    —Statutes.**

    Under Act Cong. May 27, 1902, Ch. 888, 32 Stat. 274, Sec.
    7 (U. S. Comp. St. 1916, Sec. 4223), providing that adult heirs
    of a deceased Indian to whom trust or other patent containing
    restrictions on alienation has been issued for lands allotted
    him may sell such lands inherited, but that in case of minor
    heirs their interests shall be sold only by guardian duly ap-
    pointed by the proper court upon order of such court, but that
    such conveyance shall be subject to approval of Secretary of
    the Interior; and Act. Aug. 15, 1894, Ch. 290, Sec. 1, 28 Stat.
    305, as amended Act Feb. 6, 1901, Ch. 217, Sec. 1, 31 Stat.
    760 (U. S. Comp. St. 1916, Sec. 4214), authorizing Indian
    allottees or claimants of allottments to sue in proper Circuit
    Court of the United States, and authorizing such courts to try
    and determine any action or suit involving right of any per-
    son of Indian blood or descent to allotment, **held,** that the
    probate court in the county in which the land is situated had
    no jurisdiction over distribution of said lands among the heirs;
    the term "proper court" referred to in the former statute
    being presumably the appropriate federal Circuit Court auth-
    orized to act under said statutes.   Egan v. McDonald, 36 S.
    D. 92, 153 N. W. 915; Tripp v. Sieler, 38 S. D. 321, 161 N.
    W. 337; Oldham v. Nelson, 38 S. D. 451, 161 N. W. 814; and
    Carlow v. Jordan, 39 S. D. 28, 162 N. W. 749, explained.

2.  **Same—Allottee, Title Through Heirs of—Interest of Allottee,
    Nature of, Under Trust Patent, Effect—Statutes.**

    Under Act Cong. Feb. 8, 1887, Ch. 119, 24 Stat. 389, Sec.
    5 (U. S. Comp. St. 1916, Sec. 4201), as amended by Act Feb.

1—Vol. 40, S. D.

28, 1891, Ch. 383, Sec. 5, 26 Stat. 795 (U. S. Comp. St. 1916, Sec. 4222), authorizing Secretary of Interior to cause patents to issue to Indian allottees, declaring that United States holds the land allotted for 25 years in trust for the Indian allottee or his heirs and that at expiration of that period it will convey same by patent to the Indian or his heirs, provided that the President may in his discretion extend such period; and Act Cong. June 25, 1910, Ch. 431, 36 Stat. 855, U. S. Comp. St. 1916, Sec. 4226, Fed. Stat. Ann. 1912, Supp. 96, in effect restoring to Secretary of the Interior the exclusive power to act in process of transfer of Indian titles, which power had been taken from him by Act Cong. Aug. 15, 1894, and Act Cong. Feb. 6, 1901, **held**, that the trust patent so authorized to be approved and issued allots and embraces only a tribal possessory right of the allottee or his heirs, and not the title thereto; and the land, during said trust period, remains the property of the federal government. So **held**, in view of claims of appellant grantee from Indian heirs, that Secretary of the Interior was authorized to sell allotted land after allottee's death, and that by his approval of deed purporting to convey the whole of the land inherited, the whole title, legal and equitable, was thereby conveyed to purchaser regardless of fact that one or more of allottee's heirs did not join in the conveyance, and in view of contention of plaintiff-respondent, mortgagee of part of the land, that Secretary of the Interior had no authority, at law or equity, and that heirs of deceased allottee inherit an equitable title to the land under the trust patent, and the same interest deceased allottee had, and that Congress cannot by legislation subsequent to issuance of trust patent divest such equitable interest of allottee, or that of his heirs after his death, and that Secretary of Interior possesses no legal authority greater than that possessed by the Congress.

3.  **Same.—Title Through Heirs of Indian Allottee—Disputes Involving Trust Patent Rights, Power of Secretary of Interior Concerning—Concurrent Authority of Courts—Statutes.**

Under Act Cong. Aug. 15, 1894, Ch. 290, Sec. 1, 28 Stat. 305, as amended by Act Feb. 6, 1901, Ch. 217, Sec. 1, 31 Stat. 760, (U. S. Comp. St. 1916, Sec. 4214), authorizing suits in federal Circuit Courts by Indian allottees or claimants, to determine their rights, and providing that the judgment or decree, when properly certified to Secretary of the Interior, shall have same effect as if allotment had been allowed and approved by Secretary of the Interior; and Act May 27, 1902, Ch. 888, 32 Stat. 245, authorizing Secretary of the Interior to approve Indian trust patents, and conveyances under guardian sale of interests of minor heirs of deceased allottee, **held**, that said statutes did not deprive Secretary of Interior of authority

to settle disputes concerning allotments; but that under Act Cong. June 25, 1910, Ch. 431, 36 Stat. 855, U. S. Comp. Stat. 1916, Sec. 4226, Fed. Stat. Ann. 1912, Supp. 96, exclusive power to settle such disputes was re-vested in said federal official, which exclusive power had previously been taken from him, and part thereof vested as concurrent authority in the federal Circuit Courts under said Acts of 1894 and 1901.

4.  Same—Allotments—Title of Indian Allottee's Heirs, Sale and Conveyance of Interests of—Regulations of Interior Department, Appraisal of by Special Agents, Examination for Sale— Conveyance of Whole Tract, or Heir's Interest—Secretary's Approval, Effect—Undivided Interest, How Involved—Title Under Secretary's Approval to Purchaser, Compared—Statutes.

Congress, under Act Cong. Feb. 8, 1887, and other cognate federal statutes, and under regulations of Interior Department concerning sale by heirs of a deceased allottee, and examination of land by special agents of the department and approval thereof by the department, has plenary authority and control over tribal Indians and their relations and property interests, real and personal, before and after they become citizens; and such land could not be sold for less than appraised value; and such sale, and the approval thereof by the Secretary was of the whole tract inherited, and not merely of the interest of a particular heir; this in view also of a departmental rule that no deed or conveyance for an undivided interest in any tract would receive approval; there being no difference in legal effect between a conveyance under such sale and approval thereof under Act of Cong. May 27, 1902, concerning sale and conveyance of lands of heirs of Indian allottee, and a government patent issued directly to purchaser under Act June 25, 1910, in effect re-vesting in Secretary of Interior exclusive power to settle claims; that the federal government, by its Congress, had and has complete authority over tribal Indians and their property, real or personal, unaccountable to any other body or tribunal; that Indian trust property, while held by the government, differs from the ordinary trust, in that Congress has full authority to make or unmake rules governing execution of the trust; that the government could dispose of such property through agency of Secretary of the Interior.

5.  Same—Title to Lands of Allottee Heirs—Invalid Probate Distribution—Sale Through Secretary of Interior—Approval by Department, Effect—Rights of Omitted Heirs, Whether they Follow Land, or Fund.

Under Act Cong. May 27, 1902, Ch. 888, Sec. 7, 32 Stat. 275 (U. S. Comp. St. 1916, Sec. 4223); Act Feb. 8, 1887, Ch. 119, 24 Stat. 389, Sec. 5 (U. S. Comp. St. 1916, Sec. 4201), as amended by Act Feb. 28, 1891, Ch. 383, Sec. 5, 26 Stat. 795

(U. S. Comp. St. 1916, Sec. 4222), concerning sale and transfer of trust or other patent interests of heirs of deceased Indian allottee and approval thereof by Secretary of the Interior, held, that where probate court of county in which such lands are situated erroneously assumed it had jurisdiction to distribute lands of heirs of deceased allottee under trust patent, and to partition lands between widow and children of a deceased allottee, and where the widow conveyed the land set apart to her by a deed approved by Secretary of the Interior, such approval in effect nevertheless conveyed to the purchaser under departmental sale the fee simple title to the whole tract involved, free and clear of rights of any heir of any deceased allottee; that the rights, if any, of any heirs who, in the recital as to heirships in the departmental proceedings, was omitted, should not follow the land, but should follow the fund realized upon such sale.

6. **Appeals—Error—Suit Involving Title of Ind'an Allottee's Heirs— Proceedings Before Indian Official; Necessity—Waiver of Question in Supreme Court, Effect—Title, Whether Marketable.**

Where a contract between plaintiffs and defendants for an exchange of lands required defendants to bring proceedings before Secretary of the Interior to cure supposed defects in the title to land derived under federal departmental sale of interest of heirs of deceased allottee, held, that where in a suit to foreclose a mortgage given to secure performance of the contract, the record on appeal shows the real ground of contention between the parties was whether defendants had a good title, and plaintiff in his brief stated he would make no claim whatever because defendants did not institute such proceedings before Secretary of the Interior, the question as to effect of such failure was thereby waived. Held, further, that under such record and waiver, the title tendered by defendant was marketable.

Appeal from Circuit Court, Charles Mix County. Hon. ROBERT B. TRIPP, Judge.

Action by Kathleen Daugherty, against Samuel E. McFarland and another, to foreclose a mortgage given to secure performance of a contract for exchange of lands. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

*F. B. Morgan,* and *C. M. Stilwill,* for Appellants.

*French, Orvis & French,* for Respondent.

(2) Under point two of the opinion, Appellants submitted that:

The trust patent executed to the Indian under the Act of Congress of February 8, 1887, under which the Indians were allotted lands, did not convey the title; and cited

United States v. Rickert, 47 L. Ed., 536; U. S. v. Gardner, 133 Fed. 285; Bond v. U. S., 181 Fed. 613.

That the sale of such lands is by and under the direction of the Secretary of the Interior. The deed issued does not purport to convey the interest of the Indians executing the same, but is a conveyance of the whole of the land, and the consideration paid by the purchaser must be not less than the appraised value of the whole; such approval being the important step. That the purchaser then deals with the Government in acquiring such lands; citing: Act Cong. June 9, 1910.

(3)   To point three of the opinion, Appellants cited:

Bond v. U. S., 181 Fed. 613.

Respondent cited:

Brown v. Hitchcock, 173 U. S. 473, 43 L. Ed., 773.

(4)   Under point four of the opinion, Appellants submitted that:

There is no difference in legal effect between the conveyances signed by the Indians and approved by the Department as made under the Act of 1902, and those where patents are issued direct to purchasers under the Act of 1910. They differ in form but not in substance; that the proceeds of sale become the trust property, and are impressed with the trust precisely the same as the land was before the sale; citing:

U. S. v. Thurston County, 143 Fed. 287; National Bank v. Anderson, 147 Fed. 87.

Respondent submitted that:   These authorities cited do not sustain appellants' contention, unless the sale of the land was authorized, that is, unless the Secretary of the Interior has the legal right and authority to sell the land without reference to whether or not the heirs of the deceased allottee have joined in executing the deed which the Secretary approves, citing: Chase v. U. S., 138, C. C. A. 117, 222 Fed. 593.

(5)   Under point five of the opinion, Respondent submitted that:   A deed executed by those claiming to be all the heirs of a deceased allottee, and approved by Secretary of the Interior in

pursuance of Act of Cong. of May 22, 1902, conveys good prima facie title, and it is incumbent upon one before he can defeat such prima facie title to show existence of other heirs; citing: Tripp v. Sieler, 38 S. D. 321, 161 N. W. 337.

GATES, J. Action to foreclose a mortgage given to secure performance of a contract for an exchange of lands. Findings, conclusions, and judgment were entered in favor of plaintiff mortgagee. Defendants appeal from the judgment and an order denying a new trial. The basis of the judgment is a conclusion of law to the effect that the abstract of title to 80 acres of the land agreed to be conveyed by defendant Samuel E. McFarland to plaintiff did not show a marketable title. If that conclusion of law is sound, the judgment should in the main be sustained. If it is unsound, the judgment should be reversed. This 80-acre tract was allotted to a Sioux Indian, Paul Goodcloud, by the United States government by trust patent (so called) issued November 24, 1894, pursuant to Act Cong. Feb. 8, 1887, c. 119, § 5, 24 Stat. 388, U. S. Comp. St. 1916, § 4201, 3 Fed. Stat. Ann. 494, as amended by Act Cong. Feb. 28, 1891, c. 383, 26 Stat. 794, U. S. Comp. St. 1916, § 4222, 3 Fed. Stat. Ann. 499. Paul Goodcloud died, and the county court of Charles Mix county, S. D., assumed jurisdiction of his estate. In probate proceedings in said county court in his estate the tract was distributed to Iron Soldier, his father. In probate proceedings in said county court in Iron Soldier's estate the undivided two-thirds of this tract was distributed to four children, of whom two were minors, and one-third to his widow, Ptesanwin. In partition proceedings in said estate in said county court said tract was set apart to Ptesanwin on September 9, 1904, and other allotted lands were set apart to the children. On January 6, 1905, said tract was conveyed by deed from Ptesanwin to one August Lahr, which deed was approved by the Secretary of the Interior March 20, 1905. Subsequently Lahr conveyed to defendant Samuel E. McFarland. Other court proceedings in the Circuit Court of Charles Mix county were had, and also proceedings before the Department of the Interior, culminating in a decision of such department rendered in May, 1915, which we deem immaterial to the issue if, as we believe, the whole title to the tract passed to August Lahr by

reason of the approval of his deed by the Secretary of the Interior. In the Indian Appropriation Act (Act Cong. May 27, 1902, c. 888, 32 Stat. 245), there was added section 7, 32 Stat. 275 U. S. Comp. St. 1916, § 4223 3 Fed. Stat. Ann. 505, which reads as follows:

"That the adult heirs of any deceased Indian to whom a trust or other patent containing restrictions upon alienation has been or shall be issued for lands allotted to him may sell and convey the lands inherited from such decedent, but in case of minor heirs their interests shall be sold only by a guardian duly appointed by the proper court upon the order of such court, made upon petition filed by the guardian, but all such conveyances shall be subject to the approval of the Secretary of the Interior, and when so approved shall convey a full title to the purchaser, the same as if a final patent without restriction upon the alienation had been issued to the allottee. All allotted land so alienated by the heirs of an Indian allottee and all land so patented to a white allottee shall thereupon be subject to taxation under the laws of the state or territory where the same is situate; provided, that the sale herein provided for shall not apply to the homestead during the life of the father, mother or the minority of any child or children."

[1] Presumably it was by reason of this statute that the county court of Charles Mix county assumed that it had jurisdiction over this allotted land. In McKay v. Kalyton, 204 U. S. 458, 27 Sup. Ct. 346, 51 L ed. 566, the present Chief Justice said:

"As observed in the Smith Case, 194 U. S. 408 [24 Sup. Ct. 676, 48 L. ed. 1039], prior to the passage of the act of 1894, 'the sole authority for settling disputes concerning allotments resided in the Secretary of the Interior.' This being settled, it follows that prior to the act of Congress of 1894 controversies necessarily involving a determination of the title and incidentally of the right to the possession of Indian allotments while the same were held in trust by the United States were not primarily cognizable by any court, either state or federal. It results, therefore, that the act of Congress of 1894, which delegated to the courts of the United States the power to determine such questions, cannot be

construed as having conferred upon the state courts the authority to pass upon federal questions over which, prior to the act of 1894, no court had any authority."

See, also, Smith v. Smith, 140 Wis. 599, 123 N. W. 146; S. D. Const. art 22, par. 2.

We think it must be conceded that such county court did not have such jurisdiction. The "proper court" referred to in said section was presumably the appropriate federal Circuit Court authorized under Act Aug. 15, 1894, as amended by Act Feb. 6, 1901, c. 217, § 1, 31 Stat. 760, U. S. Comp. St. 1916, § 4214, 3 Fed. Stat. Ann. 503.

In Egan v. McDonald, 36 S. D. 92, 153 N. W. 915, we held that it was unnecessary to determine whether the county court had such jurisdiction, and whether the Secretary of the Interior acted upon such proceedings in approving a deed or acted upon information from another source. We held that the approval of the deed by the Secretary terminated the jurisdiction of the United States over the land, and that, by reason of a decree of the state circiut court in an action begun subsequently to such approval, the title was merchantable. In Tripp v. Sieler, 38 S. D. 321, 161 N. W. 337, we said:

"While such recitals, nor the approval of the deed by the Interior Department, do not amount to an adjudication that the parties who executed the deed are the sole heirs of the allottee, * * * the deed executed and approved under the above circumstances conveys good prima facie title, and it was incumbent upon the respondent to show the existence of other heirs before he can defeat appellant's title on that account."

This position was affirmed in Oldham v. Nelson, 38 S. D. 451, 161 N. W. 814. In the foregoing opinions this court arrived at what we believe to be correct conclusions in spite of the lurking idea that, if other heirs than those executing the deeds had been apparent, the titles might not have been merchantable. In Carlow v. Jordan, 39 S. D. 28, 162 N. W. 749, in considering said acts of Congress as amended by Act May 8, 1906, c. 2348, 34 Stat. 182, U. S. Comp. St. 1916, § 4203, Fed. Stat. Ann. 1909 Supp. 204, and Act June 21, 1906, c. 3504, 34 Stat. 327, U. S. Comp. St. 1916, §§ 4235, 4236, Fed. Stat. Ann. 1909 Supp. 207, we said:

"Under this federal law the plaintiff, as father of John Carlow, deceased, had no interest whatever in said land until he received said patent. The interest in said land held by John Carlow during his lifetime was only a trust in his behalf. The legal title was at all times in the federal government.

It will be observed from these statutes and Act June 25, 1910, c. 431, 36 Stat. 855, that at the present time upon the death of an allottee the so-called trust patent is canceled, and a patent in fee is granted to the heirs or to the purchaser as determined by the Secretary of the Interior. In the present case, even if the heirs of Paul Goodcloud and of Iron Soldier were as determined by said county court, yet it affirmatively appears that only one of the heirs of the latter executed the deed to August Lahr, and that at that time there were four other heirs. This situation necessitates the determination of two questions: (1) The nature of the interest acquired by the allottee; and (2) the effect of the approval of the deed to Lahr by the Secretary of the Interior on March 20, 1905. In effect, the contention of appellant is that the Secretary of the Interior had authority to sell allotted land in case of the death of the allottee, and that by his approval of a deed purporting to convey the whole of the land the whole title, legal and equitable, was thereby conveyed to the purchaser regardless of the fact that one or more heirs of the allottee did not join in the conveyance.

The contention of respondent is stated in her brief as follows:

"It is our contention that the Secretary of the Interior has no arbitrary authority under any law or principle of equity, that the heirs of a deceased allottee inherit an equitable title to the land described in the instrument designated a trust patent, that they inherit the same interest which the deceased allottee had before his death, and that the Congress itself cannot by legislation subsequent to the issuance of the trust patent divest the equitable interest of the allottee, or, after his death, of his heirs, and it is our contention that the Secretary of the Interior possesses no legal authority greater than that possessed by the United States Congress."

[2] In support of this contention respondent relies chiefly upon Chase v. United States, 138 C. C. A. 117, 222 Fed. 593,

but that decision was reversed on October 2, 1917, in United States v. Chase, 245 U. S. 89, 38 Sup. Ct. 24, 62 L. ed. ——, wherein it was held that assignments of land under the Omaha Treaty of 1865 amounted only to an apportionment of the tribal possessory right. We are of the view that the reasoning of the latter opinion is applicable to the allotment in question. This being the latest utterance of the Supreme Court, it must be deemed to be a retraction of the following statement in McKay v. Kalyton, supra, viz:

"The suggestion made in argument that the controversy here presented involved the mere possession, and not the title, to the allotted land, is without merit, since the right of possession asserted of necessity is dependent upon the existence of an equitable title in the claimant under the legislation of Congress to the ownership of the allotted lands."

The concluding point decided in Harnage v. Martin, 242 U. S. 386, 37 Sup. Ct. 148, 61 L. ed. 382, would seem on the surface to sustain the right of an omitted heir to contest the conveyance, but that case turns upon the proposition that there the interest of the allottees was ownership of the soil in place of the mere possessory right here shown. Such possessory right must be the only right given by the so-called trust patent, else Act Cong. June 25, 1910, c. 431, 36 Stat. 855, U. S. Comp. St. 1916, § 4226, Fed. Stat. Ann. 1912 Supp. 96, would be invalid as to allotments made prior thereto or at least as to those made prior to Act May 8, 1906, c. 2348, 34 Stat. 182, U. S. Comp. St. 1916, § 4203, Fed. St. Ann. 1909 Supp. 204. In Williams v. Johnson, 239 U. S. 414, 36 Sup. Ct. 150, 60 L. ed. 358, we find a resume of the oft-repeated status of Indian allottees, viz:

"It has often been decided that the Indians are wards of the nation, and that Congress has plenary control over tribal relations and property, and that this power continues after the Indians are made citizens, and may be exercised as to restrictions upon alienation."

See, also, United States v. Nice, 241 U. S. 591, 36 Sup. Ct. 696, 60 L. ed. 1192, and United States v. Waller, 243 U. S. 452, 37 Sup. Ct. 430, 61 L. ed. 843.

In United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. ed. 532, we find the following:

"It was, in fact, the property of the United States, and was put into the hands of the Indians to be uesd in execution of the purpose of the government in reference to them."

Specifically this language referred to personal property, but from the whole of that decision we are of the view that the Supreme Court considered that language applicable as well to allotted lands. See, also, United States v. Pearson (D. C.) 231 Fed. 270. In Bond v. United States (C. C.) 181 Fed. 613, a decision which has been cited with approval by the Supreme Court, and which appears to us to be the best summary of the status of allottee Indians, the court said of Act Feb. 8, 1887:

"By this act the United States retained title to and control over the allotted lands during the trust period, without any right in the allottee to do more than occupy and cultivate them under a paper or writing showing that at a particular time in the future, unless it is extended by the President, he would be entitled to a regular patent conveying the fee. The property did not cease, by the allotment, to be the property of the United States nor subject to its control, nor did the allottee cease to be a ward of the government. The title still remained in the government, and the allottee remained in a condition of pupilage and dependency. The determination of all disputes concerning the allotment, its occupancy and possession, and the general control of the Indian, remained with the Secretary of the Interior."

[3] Some suggestion is made that Act Aug. 15, 1894, c. 290, § 1, 28 Stat. 305, as amended by Act Feb. 6, 1901, c. 217, § 1, 31 Stat. 760, U. S. Comp. St. 1916, § 4214, 3 Fed. Stat. Ann. 503, deprived the Secretary of the Interior of authority to settle disputes concerning allotments. It may be observed that the later enactment of May 27, 1902, supra, specifically authorized the Secretary of the Interior to approve the deed in question, but we are also of the view that the act of 1894, as amended by the act of 1901, did no more than vest authority in the then federal Circuit Court concurrent with the Secretary of the Interior, and that when, in Hallowell v. Commons, 239 U. S. 506, 36 Sup. Ct. 202, 60 L. ed. 409, the Supreme Court said in reference to

Act June 25, 1910, c. 431, 36 Stat. 855, U. S. Comp. Stat. 1916, § 4226, Fed. Stat. Ann. 1912 Supp. 96:

.    "This act restored to the Secretary the power that had been taken from him by acts of 1894 and February 6, 1901."
—the court meant that the exclusive power had been taken from the Secretary by those acts and restored by the act of 1910. Otherwise it would be difficult to explain the meaning of the clause in the act of 1901:

"And the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him."

[4, 5]   Another point worthy of consideration is that under the regulations of the Interior Department, when a sale was sought to be made by the heirs of an allottee, the land was examined by special agents of the Department, and was appraised by the Department, and it could not be sold for less than the appraised value.   When the sale was made, it was the whole of the tract that was sold, and not the interest of any particular heir.   The approval by the Secretary of the Interior was an approval of the sale of the whole tract, not of the sale of the interest of such particular heir.   Another rule of the Department provided that no deed or conveyance for an undivided interest in any tract would receive approval.   To our minds there would be no difference in legal effect between the conveyance in question which was approved by the Secretary under the act of 1902 and a government patent issued directly to the purchaser under the provisions of the act of June 25, 1910.

From the various acts of Congress and from the interpretations thereof by the many decisions of the Supreme Court of the United States, we are of the opinion that the lands allotted under the act of February 8, 1887, continued to be government property; that the government by its Congress had complete authority over tribal Indians and over the property, real or personal, committed to them, unaccountable to any other body or tribunal; that, while it held the property in trust for the Indians, such trust differed from the ordinary trust, in that Congress had full authority to make or unmake the rules governing the execution of the trust;

that the federal government could dispose of such property through the agency of the Secretary of the Interior; that by the approval of the deed in question it did convey to August Lahr the fee-simple title to the whole of the tract involved, free and clear of the rights of any heirs of Goodcloud or of Iron Soldier; and that the rights, if any, of such omitted heirs should not follow the land, but should follow the fund realized upon the sale. United States v. Thurston County, 74 C. C. A. 425, 143 Fed. 287; Nat. Bank of Commerce v. Anderson, 77 C. C. A. 259, 147 Fed. 87.

[6]    While under the strict letter of the contract respondent might be entitled to prevail in the action regardless of whether the interest of the Indians in the land had been extinguished because the contract provided that certain proceedings should be instituted before the Secretary of the Interior, yet in view of the arguments submitted to this court it is evident that the real ground of contention between the parties is the issue we have above decided. Therefore, and especially in view of the statement in respondent's brief, viz:

"We will frankly say at this place that we make no claim whatever because the appellant Samuel E. McFarland did not institute proceedings before the Secretary of the Interior to cure the defects in the title to the land."
—we treat that question as waived.

Hence it follows that the title tendered was marketable, and the judgment and order appealed from must be reversed.